693 A.2d 1248

ROBERTA DUNN, PLAINTIFF–APPELLANT, v. BOROUGH OF MOUNTAINSIDE AND THOMAS MCCARTNEY, DEFENDANTS–RESPONDENTS, AND MOUNTAINSIDE POLICE DEPARTMENT, DEFENDANT.

ANN L. RENAUD, ESQ. AND RAMP & RENAUD, INTERVENORS–APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued February 13, 1997—Decided May 27, 1997.

264

Before Judges SHEBELL, BAIME and BRAITHWAITE.

*Richard F. Connors, Jr.* argued the cause for plaintiff-appellant and intervenors-appellants in A–3084–95 (*Tompkins, McGuire & Wachenfeld*, attorneys; *Christopher J. Carey* of *Ramp & Renaud*, of counsel; *Mr. Connors* and *David M. Blackwell*, on the brief).

*Matthew R. Pomo, Jr.* argued the cause for respondent Thomas McCartney in A–3084–95 (*Doyle & Brady*, attorneys; *Mr. Pomo*, on the brief).

*David M. Epstein* argued the cause for respondent Borough of Mountainside in A–3084–95 (*Post, Polak, Goodsell & MacNeill*, attorneys; *Mr. Epstein* and *Loretta B. Critchley*, on the brief).

*McCarthy and Schatzman*, attorneys for plaintiff-appellant in A–5211–95 (*W. Scott Stoner*, of counsel; *James A. Endicott*, on the brief).

*Tompkins, McGuire & Wachenfeld*, attorneys for intervenors-appellants in A–5211–95 (*Christopher J. Carey*, of counsel; *Richard F. Connors* and *David M. Blackwell*, on the brief).

The opinion of the court was delivered by

**BRAITHWAITE, J.A.D.**

Plaintiff, Roberta Dunn, appeals from orders granting summary judgment to defendants Borough of Mountainside (Mountainside) and Thomas McCartney, dismissing her personal injury claims. She also appeals from an order denying her motion to amend her complaint to assert a legal malpractice claim against intervenors Ann L. Renaud and Ramp & Renaud (Renaud).[1]

On the appeal from orders granting summary judgment, plaintiff and Renaud contend:

*POINT I*

AS THIS MATTER INVOLVES THE APPEAL FROM FINAL SUMMARY JUDGMENT ORDERS, THE STANDARD OF REVIEW IS PLENARY.

*POINT II*

PLAINTIFF'S NOTICE OF CLAIM AND COMPLAINT WERE FILED WITHIN TWO YEARS OF HER DISCOVERY THAT A BOROUGH OF MOUNTAINSIDE POLICE OFFICER HAD SEXUALLY ASSAULTED HER AND, THEREFORE, THE ORDERS GRANTING SUMMARY JUDGMENT TO DEFENDANTS BOROUGH OF MOUNTAINSIDE AND THOMAS McCARTNEY SHOULD BE REVERSED.

a. The Discovery Rule Is An Equitable Principle Which, Under Special circumstances and in the Interests of Justice, Will Toll the Expiration of Statutes of Limitations.

b. Application of the Discovery Rule to the Within Matter Warrants Reversal of the Orders Granting Summary Judgment to Defendants Borough of Mountainside and Thomas McCartney.

*POINT III*

PLAINTIFF'S FAILURE TO FILE A FICTITIOUS NAME COMPLAINT DOES NOT CONSTITUTE A LACK OF REASONABLE DILIGENCE.

On the appeal denying her motion to amend her complaint, plaintiff asserts:

*POINT I*

THE TRIAL COURT ERRED IN DENYING PLAINTIFF'S MOTION TO AMEND BECAUSE THE ENTIRE CONTROVERSY DOCTRINE REQUIRED THAT THE MOTION BE GRANTED, THE LAW DIVISION CASE WAS

---

[1] The denial of plaintiff's motion to amend her complaint to assert a legal malpractice claim against Ann L. Renaud and Ramp & Renaud is the subject of a separate appeal under Docket No. 5211–95T1. We decide that appeal in this opinion.

STILL IN EXISTENCE AT THE TIME THE MOTION TO AMEND WAS FILED, AND SUCH MOTIONS SHOULD BE FREELY GRANTED IN THE INTEREST OF JUSTICE.

We affirm the summary judgment granted to Mountainside, reverse the summary judgment granted to McCartney, and reverse and remand for reconsideration of the order denying plaintiff's motion to amend in light of this opinion.

## I

Plaintiff's version of events are set forth as follows. At or about midnight on May 17, 1991, plaintiff left her workplace, the Dancing Lady's Lounge, which is located on Route 22 in Green Brook, and drove east on Route 22 in her car. She stopped at a Dunkin' Donuts restaurant for approximately five minutes. Thereafter, she continued to drive east on Route 22 at "highway speed" for eight minutes when she was stopped by a police officer, who told her that she had been speeding. In 1994, McCartney was identified as the police officer.

McCartney asked plaintiff for her motor vehicle registration card. She produced an expired registration card and a temporary Florida driver's license and told McCartney that she did not have a New Jersey driver's license. McCartney told plaintiff that her Florida license was invalid and that she could not drive on that license without someone accompanying her. McCartney further stated that her car would have to be towed, and she would be stranded.

McCartney also told plaintiff that it was his duty either to take her to a motel or to the police station. She chose to go to the police station, but McCartney told her that "they wouldn't have any sympathy for [her] there." Plaintiff then asked if she could drive back to her place of employment and leave her car there. McCartney said he could not let her drive the car and again offered to drive her to a motel.

Plaintiff then asked McCartney to write the ticket, and she would prove in court that her Florida driver's license was valid.

McCartney declined and said that plaintiff "would have to walk." Plaintiff began to cry.

As plaintiff was crying, two other officers drove up and asked McCartney if he needed any help. The two officers were driving the same type of patrol car as the one McCartney was driving. McCartney advised the officers that he did not need any assistance. Plaintiff believed that the officers referred to McCartney as "John."

McCartney asked plaintiff whether she was a barmaid or a dancer at the Dancing Lady's Lounge, and she told him that she was a dancer. McCartney then asked her if the dancers at that lounge still danced in the nude. She replied, "yes," and McCartney told plaintiff that he would like to see her dance.

McCartney then told plaintiff to follow him in her car, which she did. She thought about trying to get away, but she continued to follow McCartney because she was scared that he was a "maniac." She followed McCartney to a deserted parking lot behind a square, plain-looking building with a wooded area on one side of the lot. Plaintiff got out of her car in the parking lot and said to McCartney "please don't hurt me." McCartney responded angrily, "you think I'm some kind of weirdo, don't you?" He later stated, "if you won't do this, I'll write you the summonses right now and take your car." Because she was alone with McCartney and felt that she had no other choice, plaintiff then said "no, I'll do it."

McCartney directed plaintiff to dance nude like she does at work. She did so for about three minutes but held her clothes so they covered her body while she danced. While she was dancing, McCartney asked her if dancing turned her on and commented that she was "in good shape for [her] age."

After she finished dancing, McCartney asked plaintiff if she ever thought about having sex with a police officer, and she told him that she had not. McCartney then asked her if she would have sex with him, and she again answered "no." McCartney told

her that she should be grateful to him. Plaintiff replied that she was. Then McCartney asked, "well just a hand job?" Plaintiff again replied "no."

After imploring plaintiff to engage in sexual relations, McCartney took off his belt, took out his penis, and then sexually assaulted plaintiff. Thereafter, McCartney returned plaintiff's registration card and told her "you didn't have to do that, you know that." Finally, McCartney told her that "anytime you're in Green Brook you have carte blanche." Plaintiff got back in her car, and McCartney led her back to Route 22 east. McCartney then headed west on Route 22.

Plaintiff told her employer at the Dancing Lady's Lounge about the incident. Her employer reported the incident to the Green Brook Police. The next morning, plaintiff called a rape crisis center. At the suggestion of the Union County Rape Crisis Center, she contacted the Somerset County Prosecutor's Office to report the incident. She was subsequently interviewed by the Somerset County Prosecutor's Office and the Union County Prosecutor's Office.

Plaintiff described McCartney as a six-foot tall white male with a clean-shaven, boyish face; full lips; light complexion; light, sandy-colored hair; and a medium build. Plaintiff recalled that he had told her that he was twenty-five years old. According to plaintiff, he looked "all-American." Plaintiff did not recall whether McCartney was wearing a hat, but he was not wearing glasses or any jewelry and did not have any distinguishing features such as scars, marks, or tattoos. His uniform was a light "grayish blue," and he wore a belt with a gun. McCartney also told her his name, but she could not remember it. Plaintiff thought that his name was either John or Tom. Plaintiff had previously stated that she was "ninety-five percent sure" that she would recognize him again.

On May 20, 1991, plaintiff retained Renaud to represent her in this matter. Plaintiff "relied at all times upon public agencies to determine the identity of her assailant." She did, however, peri-

odically contact the Union County Prosecutor's Office to check on the status of the investigation. Furthermore, when asked for input into the investigation, she cooperated with the authorities.

On July 2, 1993, plaintiff reviewed an array of one hundred and four photographs. She picked out two photographs, one of which was of McCartney. She could not make a positive identification, however, because McCartney had a mustache in that photograph. Plaintiff stated that McCartney did not have a mustache at the time of the incident. At plaintiff's suggestion, a lineup was arranged with McCartney as one of the participants. She did not positively identify him at the lineup.

Plaintiff also drove on Route 22 "countless times" or "twenty times" and underwent hypnosis, but not with a medical professional, in an effort to recall more details about the incident so that she could help find her assailant. She did not positively identify McCartney as the officer who assaulted her until she saw his picture in the *Newark Star–Ledger* accompanying an article dated May 7, 1994, which indicated that McCartney had been indicted for similar incidents with other women. She then promptly contacted her attorney, Renaud, and told Renaud that McCartney was the officer who had assaulted her.

On July 1, 1994, Renaud advised Mountainside and the Mountainside Police Department (Mountainside Police) of plaintiff's intention to file a claim against them pursuant to the Tort Claims Act, *N.J.S.A.* 59:1–1 to –12–3 (TCA), based on McCartney's sexual assault of plaintiff.

On December 15, 1994, plaintiff filed a six-count complaint against Mountainside, Mountainside Police, McCartney, and the fictitious defendants John Doe (1–10) and ABC Corp. alleging the following: (1) McCartney forced her to engage in various sexual acts against her will; (2) Mountainside's negligent hiring, training, and supervision of McCartney; (3) intentional and negligent infliction of emotional distress; (4) willful and wanton conduct, gross negligence, and recklessness; (5) assault and battery; and (6) the tort of outrage, which duplicates the portion of the third count

alleging intentional infliction of emotional distress. The complaint sought compensatory and exemplary damages.

After filing an answer, Mountainside and Mountainside Police moved to dismiss count one and counts three through six of the complaint and plaintiff's claims for exemplary damages asserting that the counts failed to state a claim upon which relief could be granted. On June 23, 1995, Mountainside's motion was granted. The judge also dismissed count two against Mountainside Police, *sua sponte*, because he determined that Mountainside Police was not a separate and distinct entity from Mountainside.

In August 1995, Mountainside moved for summary judgment on count two based on the notice of claim provisions and the statute of limitations contained in *N.J.S.A.* 59:8-8. On September 29, 1995, Mountainside's motion was granted.

In December 1995, McCartney moved for summary judgment asserting plaintiff's failure to comply with the applicable statute of limitations and the notice of claim provisions of the TCA. The motion was granted on January 19, 1996, but the order was not signed until February 20, 1996.

On February 7, 1996, plaintiff filed a notice of appeal from the motion judge's decisions granting summary judgment to Mountainside and McCartney. Technically, the notice of appeal was filed prematurely because the motion judge had not signed the order dismissing the complaint against McCartney.

On February 15, 1996, after filing this appeal, but before the motion judge signed the order dismissing the complaint against McCartney, plaintiff moved to amend her complaint to include a claim for malpractice against her attorney Renaud. On March 29, 1996, plaintiff's motion to amend the complaint was denied. On May 13, 1996, plaintiff filed a separate appeal from the March 29, 1996, denial. This separate appeal is docketed as A–5211–95.

On April 8, 1996, Renaud filed a motion with this court to intervene in the appeal dismissing plaintiff's claims against Mountainside and McCartney, which was granted on June 20, 1996. On

the same day, we also granted Renaud's motion to be relieved as plaintiff's counsel. By order dated August 27, 1996, we permitted plaintiff to rely on the brief filed on behalf of intervenors. Counsel for intervenors argued the cause for both plaintiff and intervenors because of their common interest.

## II

We first address the propriety of granting summary judgment to Mountainside and the application of the discovery rule to plaintiff's claims against Mountainside and McCartney. Plaintiff and Renaud argue that the TCA's requirement that an injured person timely file suit, pursuant to *N.J.S.A.* 59:8–8, should have been tolled by the discovery rule. The motion judge found that "plaintiff did not act diligently in attempting to discover the identity of this defendant," and therefore, the discovery rule did not toll the statute of limitations or the time period during which plaintiff was required to file a notice of claim. Accordingly, the judge granted summary judgment to Mountainside and McCartney. Mountainside and McCartney argue that the trial court properly dismissed the complaint because plaintiff failed to meet the requirements of the discovery rule.

*N.J.S.A.* 59:8–8 provides, in pertinent part, as follows:

A claim relating to a cause of action for death or for injury or damage to person or to property shall be presented as provided in this chapter not later than the ninetieth day after accrual of the cause of action. After the expiration of six months from the date notice of claim is received, the claimant may file suit in an appropriate court of law. The claimant shall be forever barred from recovering against a public entity or public employee if:

a. He failed to file his claim with the public entity within 90 days of accrual of his claim except as otherwise provided in section 59:8–9; or

b. Two years have elapsed since the accrual of the claim....

[*Ibid.* (footnote omitted).]

The accrual date of the cause of action under the TCA is "the date on which the claim accrued and shall not be affected by the notice provisions contained [in the TCA]." *N.J.S.A.* 59:8–1.

It is undisputed that plaintiff knew that she had been sexually assaulted at about midnight on May 17, 1991, by a municipal police officer. Yet, plaintiff did not file suit until December 15, 1994, more than three years later. Generally, a tort claim accrues when a person is injured due to another person's fault. *See Rosenau v. City of New Brunswick*, 51 *N.J.* 130, 138, 238 *A*.2d 169 (1968). Therefore, plaintiff's action against Mountainside is barred by *N.J.S.A.* 59:8–8b, which requires a complaint to be filed within two years after plaintiff's cause of action accrued.[2] Moreover, plaintiff also failed to comply with the notice of claim provision of the TCA. *See N.J.S.A.* 59:8–4; *N.J.S.A.* 59:8–8.

Plaintiff and Renaud argue that this claim is saved by the discovery rule. We disagree. The discovery rule is an equitable doctrine created by the courts to protect unsuspecting persons from statutory limitations periods during which a claim must be brought or forever lost. *See Lopez v. Swyer*, 62 *N.J.* 267, 272–74, 300 *A*.2d 563 (1973). A cause of action does not accrue under the discovery rule "until the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered, that he may have a basis for an actionable claim." *Id.* at 272, 300 *A*.2d 563.

Plaintiff's and Renaud's reliance on *O'Keeffe v. Snyder*, 83 *N.J.* 478, 416 *A*.2d 862 (1980), is misplaced. In *O'Keeffe*, the plaintiff, an artist, did not have a viable replevin action until she knew or should have known that her paintings were in another person's possession. Prior to that time, the paintings were just missing.

---

[2] Plaintiff could have filed suit against fictitious municipalities, pursuant to *Rule* 4:26–4, within the statute of limitations under *N.J.S.A.* 59:8–8. This rule would allow plaintiff to amend her complaint at a later date to name Mountainside as a defendant even after the statute of limitations had elapsed. *See Farrell v. Votator Div. of Chemetron Corp.*, 62 *N.J.* 111, 120–23, 299 *A*.2d 394 (1973). The fictitious pleading rule, however, does not affect the notice of claim requirement under the TCA.

■ The Court in *O'Keeffe* based its ruling on the common law principles surrounding replevin actions and the acquisition of title to the personal property. *See id.* at 497–500, 416 *A.*2d 862. Replevin, however, is not the cause of action in this case. Under the general principles of the discovery rule, it is the discovery of the injury that is important, not the discovery of the injurer. The present case is distinguishable from *O'Keeffe.*

■ We conclude that the discovery rule does not apply. The discovery rule suspends the statute of limitations "when the plaintiff is unaware of his or her injuries or of the culpability of another." *Viviano v. CBS, Inc.,* 101 *N.J.* 538, 547, 503 *A.*2d 296 (1986). The rule does not delay the accrual of the cause of action when the plaintiff knows about the injury but cannot determine the tortfeasor's identity. *Id.* at 546–47, 503 *A.*2d 296. Here, plaintiff knew that she had been sexually assaulted and therefore had a cause of action, but she had difficulty ascertaining the identity of the tortfeasors. The protection of the discovery rule is therefore not available to plaintiff with respect to her claims against Mountainside or McCartney. Although we hold that the discovery rule is not available to plaintiff with respect to her claims against Mountainside and McCartney, we conclude, *infra,* that plaintiff's claims against McCartney should not be barred by the statute of limitations. Because plaintiff failed to file her complaint against Mountainside within two years of May 17, 1991, her claim is barred. *See N.J.S.A.* 59:8–8b.

■ Plaintiff and Renaud raise two additional points that only merit brief discussion. First, they argue that the motion judge should have held a hearing pursuant to *Lopez, supra,* prior to determining the application of the discovery rule. We conclude, however, that such a hearing was not required. The material facts regarding plaintiff's efforts to identify the tortfeasors were not in dispute, and credibility was not an issue. Under such circumstances, a hearing was not necessary. *See Lopez, supra,* 62 *N.J.* at 275–76, 300 *A.*2d 563.

Second, plaintiff and Renaud argue that *Brill v. Guardian Life Insurance Co. of America*, 142 *N.J.* 520, 666 *A.*2d 146 (1995), does not apply to this case because *Brill* was decided after summary judgment was granted to Mountainside. This argument is without merit. *R.* 2:11–3(e)(1)(E). There were still "unresolved issues concerning summary judgment" at the time of the *Brill* decision, thereby making it applicable to this case. *Brill, supra,* 142 *N.J.* at 545–46, 666 *A.*2d 146.

We conclude that the motion judge was correct in refusing to apply the discovery rule but for the wrong reason. He decided that, as a matter of law, plaintiff's efforts to determine the identity of the tortfeasors were unreasonable and inadequate, and therefore, the discovery rule did not apply.

We are satisfied, however, that the discovery rule does not apply in this case because plaintiff knew at the time of the assault that she had been injured due to the fault of another. "From the moment the accident occurred, plaintiff knew of facts that equated with a cause of action. Thus ... plaintiff is not entitled to the protection of the discovery rule, and the statute of limitations began to run on the date of her injury." *Viviano, supra,* 101 *N.J.* at 547, 503 *A.*2d 296 (citation omitted). The fictitious pleading rule is the correct way for a litigant to preserve a cause of action when the litigant knows the nature of the claim but does not know the tortfeasor's identity. *See R.* 4:26–4.

"[A]n order or judgment will be affirmed on appeal if it is correct, even though the judge gave the wrong reasons for it." *Ellison v. Evergreen Cemetery,* 266 *N.J.Super.* 74, 78, 628 *A.*2d 793 (App.Div.1993). We therefore affirm the grant of summary judgment to Mountainside.

### III

We now address the propriety of granting summary judgment to McCartney. We note at the outset that under current law, a

failure to comply with the procedures of the TCA bars an action "against a public entity or public employee." *N.J.S.A.* 59:8–3.[3]

▮  At the time of the accrual of plaintiff's claim, May 17, 1991, the TCA "applie[d] to actions against public entities, but not public employees. Any failure to adhere to the Act's provisions would only affect plaintiff's claims against [the public entity]." *Morgan v. Union County Board of Chosen Freeholders,* 268 *N.J.Super.* 337, 356–57, 633 *A.*2d 985 (App.Div.1993) (citations omitted), *certif. denied,* 135 *N.J.* 468, 640 *A.*2d 850 (1994); *see also Chatman v. Hall,* 128 *N.J.* 394, 402–03, 608 *A.*2d 263 (1992). Accordingly, McCartney cannot successfully argue that plaintiff failed to comply with the provisions of the TCA. Although McCartney cannot rely on the provisions of the TCA, he can rely on *N.J.S.A.* 2A:14–2, which provides that "[e]very action at law for an injury to the person caused by the wrongful act, neglect or default of any person within this state shall be commenced within 2 years next after the cause of any such action shall have accrued." *Ibid.*

An examination of the circumstances of this case leads us to the conclusion that the statute of limitations should not bar plaintiff's claims against McCartney.

## A.

▮  In determining whether the statute of limitations was tolled while plaintiff attempted to learn her assailant's identity, it is first necessary to discuss McCartney's duties to the public as a police officer. At the time of the sexual assault, McCartney was a police officer who "must not himself violate the laws he is sworn to enforce." *State v. Cohen,* 32 *N.J.* 1, 10, 158 *A.*2d 497 (1960). "A police officer has the recognized duty to use all reasonable means to enforce the laws applicable in his jurisdiction, and to apprehend violators." *Id.* at 9, 158 *A.*2d 497. *See also State v. McFeeley,* 136

---

[3] *N.J.S.A.* 59:8–3 was amended by *L.*1994, *c.* 49, § 2, effective June 23, 1994, to bar claims against public employees when a litigant does not comply with the TCA's procedure.

*N.J.L.* 102, 108, 54 *A.*2d 797 (Sup.Ct.1947); *State v. Donovan,* 132 *N.J.L.* 319, 321, 40 *A.*2d 546 (Sup.Ct.1945); *Henderson v. State,* 7 *N.J. Misc.* 520, 522, 146 *A.* 335 (Sup.Ct.1929).

Here, McCartney not only breached his duty to enforce the law, he violated the laws that he was sworn to enforce.

> One of the fundamental duties of a police department, from chief of police to patrolman, is to be on the lookout for infractions of the law and to use due diligence in discovering and reporting them, and in a proper case arresting the perpetrator and lodging and prosecuting a proper complaint.
>
> [*McFeeley, supra,* 136 *N.J.L.* at 108, 54 *A.*2d 797 (emphasis omitted).]

There can be no dispute that had another individual assaulted plaintiff and had McCartney learned the identity of that person, he would have had a duty to report and arrest that individual.

Furthermore, McCartney violated the official misconduct statute when he failed to report his conduct after he sexually assaulted plaintiff. *N.J.S.A.* 2C:30–2 states, in relevant part, as follows:

> A public servant is guilty of official misconduct when, with purpose to obtain a benefit for himself or another or to injure or to deprive another of a benefit:
>
> a. He commits an act relating to his office but constituting an unauthorized exercise of his official functions, knowing that such act is unauthorized or he is committing such act in an unauthorized manner; or
>
> b. He knowingly refrains from performing a duty which is imposed upon him by law or is clearly inherent in the nature of his office.
>
> [*Ibid.*]

The official misconduct statute clearly applies in this situation. McCartney used his badge and authority as a police officer to stop plaintiff's vehicle and later sexually assault her. *See State v. Parker,* 124 *N.J.* 628, 592 *A.*2d 228 (1991), *cert. denied,* 503 *U.S.* 939, 112 *S.Ct.* 1483, 117 *L.Ed.*2d 625 (1992); *State v. Stevens,* 115 *N.J.* 289, 558 *A.*2d 833 (1989); *State v. Lore,* 197 *N.J.Super.* 277, 484 *A.*2d 1259 (App.Div.1984); *Kauffman v. Borough of Glassboro,* 181 *N.J.Super.* 273, 437 *A.*2d 334 (App.Div.1981), *certif. denied,* 91 *N.J.* 523, 453 *A.*2d 847 (1982). *See also T.J.M. v. Board of Trustees of Police & Firemen's Retirement Sys.,* 218 *N.J.Super.* 274, 280, 527 *A.*2d 883 (App.Div.1987) (stating that plaintiff's sexual assaults of his daughter were unrelated to his duties as a police officer). At the time of the sexual assault, McCartney was

a "public servant," pursuant to *N.J.S.A.* 2C:30–2. *See N.J.S.A.* 2C:27–1g. In addition, from the evidence presented, not only did McCartney sexually assault plaintiff, an "unauthorized exercise of his official function," *N.J.S.A.* 2C:30–2(a), he also failed to report his crime to law enforcement, a violation of his statutory and common-law duties as a police officer. *See ibid; see also McFeeley, supra,* 136 *N.J.L.* at 108, 54 *A.*2d 797.

It is clear from both case law and the official misconduct statute that McCartney had a duty to disclose his sexual assault on plaintiff.

### B.

McCartney's duty to report his sexual assault on plaintiff, at first glance, seems to violate his Constitutional privilege against self-incrimination. We find that New Jersey's privilege against self-incrimination does not apply to McCartney in this situation.

A criminal defendant's Constitutional right against self-incrimination was first applied to the states in *Malloy v. Hogan,* 378 *U.S.* 1, 84 *S.Ct.* 1489, 12 *L.Ed.*2d 653 (1964). "[O]ur state-law privilege against self-incrimination is . . . more protective than the fifth amendment." *State v. Strong,* 110 *N.J.* 583, 595, 542 *A.*2d 866 (1988). The state-law privilege against self-incrimination is set forth in *N.J.R.E.* 503, which states, in pertinent part, as follows:

> Subject to Rule 37 [Rule 530], every natural person has a right to refuse to disclose in an action or to a police officer or other official any matter that will incriminate him or expose him to a penalty or a forfeiture of his estate, except that under this rule:
>
> .        .        .        .        .        .        .        .
>
> (c) *no person has a privilege to refuse to disclose any matter which the statutes or regulations governing his office, activity, occupation, profession or calling,* or governing the corporation or association of which he is an officer, agent or employee, *require him to record or report or disclose* except to the extent that such statutes or regulations provide that the matter to be recorded, reported or disclosed shall be privileged and confidential. . . .
>
> [*Ibid.* (emphasis added).]

██ Pursuant to *N.J.R.E.* 503(c), McCartney could not assert the privilege against self-incrimination to avoid disclosing his sexual assault of plaintiff. As previously stated in Section A, *supra*, McCartney had a duty, as a police officer, to disclose his sexual assault on plaintiff. In addition, his failure to disclose was a violation of the official misconduct statute.

Whether a police officer who has committed a crime will voluntarily report his or her misdeeds to fellow officers or the authorities is not the question. It is clear, however, that a police officer's failure to report himself is not supported by the privilege against self-incrimination. It is the police officer's failure to report that would be the basis of an official misconduct charge. *See N.J.S.A.* 2C:30–2b. The privilege against self incrimination "is to be silent, it is not a privilege to commit crime." *State v. Falco*, 60 *N.J.* 570, 585, 292 *A.*2d 13 (1972).

## C.

The statute of limitations for plaintiff's claims against McCartney "are based on the goals of achieving security and stability in human affairs and ensuring that cases are not tried on the basis of stale evidence." *Zaccardi v. Becker*, 88 *N.J.* 245, 256, 440 *A.*2d 1329 (1982). Furthermore,

> Unswerving, "mechanistic" application of statutes of limitations would at times inflict obvious and unnecessary harm upon individual plaintiffs without advancing these legislative purposes. On numerous occasions we have found "such particular circumstances as to dictate not the harsh approach of literally applying the statute of limitations but the application of the more equitable and countervailing considerations of individual justice." *A "just accommodation" of individual justice and public policy requires that in each case the equitable claims of opposing parties must be identified, evaluated and weighed. Whenever dismissal would not further the Legislature's objectives in prescribing the limitation, the plaintiff should be given an opportunity to assert [her] claim.*
>
> [*Galligan v. Westfield Centre Service, Inc.*, 82 *N.J.* 188, 192–93, 412 *A.*2d 122 (1980) (citations omitted)(emphasis added).]

██ A determination on the equities of applying a statute of limitations is "within the province of the court." *Lopez, supra*, 62 *N.J.* at 274, 300 *A.*2d 563. The equities in this case, based on the

evidence presented and McCartney's duties as a police officer, weigh heavily in favor of the plaintiff.

The doctrine of equitable tolling is a basis for reinstating plaintiff's claims against McCartney. Equitable tolling may be applied where:

> the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or *where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.*
> [*Irwin v. Dept. of Veterans Affairs*, 498 *U.S.* 89, 96, 111 *S.Ct.* 453, 458, 112 *L.Ed.*2d 435, 444 (1990)(footnote omitted)(emphasis added).]

Under this doctrine, courts have allowed plaintiffs to continue litigating lawsuits filed after the statute of limitations has elapsed. *See Miller v. Beneficial Management Corp.*, 977 *F.*2d 834, 845 (3rd Cir.1992).

A court that applied the doctrine of equitable tolling when a plaintiff attempted to sue police officers for federal civil rights violations after those officers concealed their identities and were not revealed until after the statute of limitations had run noted the following:

> Yet, to apply the statutes of limitation blindly in this case would have the inevitable effect of encouraging improper conduct. Those who may benefit from a statute of limitation can have no part in preventing a potential claimant from learning their identity. Of course, unless under an affirmative duty, they need not come forward voluntarily, unasked. They may hide in the darkness caused by the potential plaintiff's lack of knowledge of their identity. But they cannot, through acts or omissions, in any way perpetuate the darkness.
> [*Davis v. Frapolly*, 742 *F.Supp.* 971, 975 (N.D.Ill.1990).]

Moreover, McCartney's assertion of the statute of limitations under these circumstances is to use it "as a sword rather than a shield." *State v. United States Steel Corp.*, 22 *N.J.* 341, 359, 126 *A.*2d 168 (1956). Statutes of limitation are primarily a shield to protect a defendant from having to defend stale claims. They should not be used as a sword by a defendant whose conduct contributed to the expiration of the statutory period. Here, McCartney's omissions delayed plaintiff from identifying him as the perpetrator. Courts "[have] often rejected a limitations defense where defendant has contributed to the delay." *Zaccardi*,

*supra*, 88 *N.J.* at 256, 440 *A.*2d 1329. Allowing plaintiff to pursue her claims properly balances the equities presented under these circumstances.

As previously stated, it is clear from the record that McCartney acted in such a way to prevent plaintiff from ascertaining his identity. His failure to report his criminal actions, in light of his clear duty as a police officer to do so, hindered plaintiff from filing suit against him in a timely manner. As a result, we hold that equitable tolling applies in this case. The statute of limitations will not bar plaintiff's claims against McCartney.

## IV

Last, we address plaintiff's appeal of the denial of her motion to amend her complaint to assert a claim for malpractice against Renaud. In denying plaintiff's motion, the judge stated, in part:

> This Court is of the opinion that no amendments can or should be made until the Appellate Division renders its decision. At that point, plaintiff's cause of action will accrue. There is no prejudice to plaintiff if her motion is denied at this time. Moreover, for all practical purposes, plaintiff has no complaint at this time. The appeal was from a final judgment dismissing plaintiff's claim with prejudice against the responsible parties. Until the Appellate Division reinstates the complaint, if it so chooses to do so, there can be no amendment of the complaint.

> For the foregoing reasons, plaintiff's motion is hereby denied.

In light of our holding reversing the summary judgment in favor of McCartney, we reverse the order denying plaintiff's motion to amend her complaint and remand for reconsideration.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.