**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3739-18T4

IN THE MATTER OF THE
ESTATE OF JAMES J.
GILLETTE,

    Deceased.

_____

Argued telephonically May 11, 2020 –
Decided May 22, 2020

Before Judges Geiger and Natali.

On appeal from the Superior Court of New Jersey, Middlesex County, Chancery Division, Docket No. P-257014.

Abraham Borenstein argued the cause for appellant Chae Sun Pak (Borenstein, McConnell & Calpin, PC, attorneys; Abraham Borenstein and Bradley M. Arlen, on the briefs).

Joseph B. Fiorenzo argued the cause for respondents Lori Ann Gillette, individually and in her capacity as Executrix, Laura Koscinski and James J. Gillette, Jr. (Sills, Cummis & Gross, PC, attorneys; Joseph B. Fiorenzo, of counsel and on the brief; David Phillips and Kyle Vellutato, on the brief).

PER CURIAM

Plaintiff Chae Sun Pak appeals from an October 29, 2018 Probate Part order dismissing her complaint with prejudice and a March 20, 2019 order denying her motion for reconsideration. We affirm.

I.

We glean the following facts from the motion record. Prior to their marriage in November 2013, plaintiff and James J. Gillette (decedent) executed a prenuptial agreement (the Agreement) on August 29, 2013. Both parties were represented by independent counsel during the negotiation and execution of the Agreement.

The Agreement notes the following. The marital residence was owned by plaintiff and decedent as joint tenants with a right of survivorship and would automatically pass to the surviving joint tenant upon the death of the other. In addition, plaintiff and decedent each owned fifty percent of Pak Enterprises, Inc., a New Jersey corporation formed to own and operate a commercial building in Sayreville. Decedent agreed "to give and bequeath" his stock ownership interest in the corporation to plaintiff, whether or not she survived him as his spouse, unless she filed for divorce.

Decedent jointly owned a cooperative apartment in Manhattan (NY co-op) with Janet Pak, plaintiff's daughter. Decedent agreed to transfer his

ownership in the NY co-op to plaintiff upon execution of the Agreement.  In 2003, decedent loaned $500,000 to plaintiff to assist her in the acquisition of a dry-cleaning business in Brooklyn.  Decedent agreed to forgive, release, and discharge the indebtedness and any interest due thereon upon execution of the Agreement.

Plaintiff was the beneficiary of the James J. Gillette Revocable Trust, whose sole asset was a $500,000 death benefit under decedent's retirement plan.  Plaintiff agreed to release all rights to any interest in decedent's retirement plan and the James J. Gillette Revocable Trust.

The Agreement also notes plaintiff and decedent each owned separate property.  In Article V of the Agreement, plaintiff waived the right to any interest she may acquire in decedent's separate property, including any right to take an elective share in decedent's estate:

> [Plaintiff] hereby waives and releases any and all rights and claims of every kind, nature and description that [plaintiff] may acquire as [decedent's] surviving spouse in [decedent's] Separate Property (as defined in the Recitals), including (but not by way of limitation) any and all rights in intestacy, and <u>any and all rights of election to take against [decedent's] Last Will and Testament</u>, under the laws of the State of New Jersey and any future amendments thereto.

> Furthermore, [plaintiff] understands it is of utmost importance to [decedent] that this waiver

> specifically apply to interests in GILLETTE ENTERPRISES, INC., CENTRAL JERSEY CONTRACTORS, INC. and GILLETTE TOWERS, INC. which are now owned by [decedent], his said three (3) children, his grandchildren or any trusts for their benefit.
>
> [(Emphasis added).]

Similarly, in Article IV, decedent waived any interest in plaintiff's separate property that he may acquire as a surviving spouse.

In Article VI, the parties mutually waived the right to equitable distribution in all separate property of the other party, including any property owned prior to the marriage. The waiver included any income derived therefrom and any capital appreciation accrued during the marriage. Finally, the parties mutually waived any past, present, or future claim for spousal support, alimony, and any claim for counsel fees upon termination of the marriage.

Attached as Exhibits "A" and "B" to the Agreement are "financial statements" identifying the assets and liabilities of decedent and plaintiff, respectively, as of December 31, 2012. Decedent's financial statement lists the value of fixed return investments (checking account, money market fund, life insurance cash value, and loans receivable), a variable-return investment (retirement plan), and personal assets (market value of Gillette Enterprises, Inc.; book value of Central Jersey Contractors, Inc.; Pak Industries/Best Cleaners

promissory note; Sayreville residence; Kissimmee, Florida residential unit (Florida Property); NY co-op; other personal assets; and estimated cash value of 50% interest in life insurance). It also listed the mortgage on the NY co-op as a liability. In addition, Article X indicates the parties—and their respective counsel—reviewed the financial statements prior to signing the agreement on August 26, 2013.

Decedent passed away on April 21, 2017. His will was admitted to probate and letters testamentary issued to his daughter, Lori Ann Gillette, on May 5, 2017. On May 11, 2017, a notice of probate was served upon all interested parties under the will, including plaintiff.

On September 18, 2017, plaintiff's counsel sent written notice to counsel for the Executrix stating that "[plaintiff] intends to enforce her elective share of the estate as [d]ecedent's surviving spouse." Plaintiff took no further action until July 12, 2018, when she filed a seven-count complaint that named Lori Ann Gillette, individually and as Executrix; Laura Koscinski, decedent's daughter; and James J. Gillette, Jr., decedent's son, as defendants and heirs-at-law of decedent's estate.

The complaint asserted claims for: dissolution of the Agreement (count one); an elective share against decedent's estate (count two);

equitable/promissory estoppel against decedent's daughter-in-law, Chrissy Gillette (count three); equitable distribution of the sale proceeds of the Florida Property (count four); appointing plaintiff as ancillary executor of decedent's estate in the New York to probate decedent's joint ownership interest in the NYC co-op (count five); unjust enrichment (counts six and seven); and fraud (count seven). Plaintiff does not challenge the dismissal of counts three and five.

As to counts one and two, plaintiff alleged the Agreement is a product of fraud and is unconscionable because: "(1) [she] was not provided full and fair disclosure of the earnings, property and financial dealings and obligations of [d]ecedent; and (2) [she] did not have, or reasonably could not have had, an adequate knowledge of the property of financial obligations of [decedent]."

As to count four, plaintiff claimed she was entitled to the sale proceeds of the Florida property because she and "decedent intended for [it] to be a martial vacation home" and it "was solely in [d]ecedent's name for convenience only."

As to counts six and seven, plaintiff alleged "approximately $350,000 was transferred from Pak Enterprises, Inc. to Central Jersey Contracting" and spent on a new development known as Gillette Towers, LLC. It further alleged decedent and the Executrix engaged in improper transfer of funds and hiding investments, checks, and cash.

6

The Middlesex County Surrogate issued an Order to Show Cause (OTSC) requiring defendants to show cause why judgment should not be entered to plaintiff on her claims and to: (a) order the executor to provide a formal accounting; (b) impose a constructive trust to prevent waste or improper transfer of assets; (c) preliminarily enjoin further estate transactions; (d) require Chrissy Gillette to reimburse the cost of repairing the damage to the Sayreville residence; and (e) grant other specified relief.

Defendants opposed the OTSC and cross-moved to dismiss the complaint or, in the alternative, for summary judgment. Defendants contended plaintiff failed to state a claim upon which relief can be granted, waived her right to an elective share, and was time-barred from seeking an elective share.

Plaintiff did not present any witnesses at the OTSC hearing and relied solely on her submissions. Following oral argument, the judge issued an oral decision and order denying plaintiff's requests to invalidate the Agreement, enforce her claim for an elective share, and award equitable distribution of the sale proceeds of the Florida Property. The judge granted defendants' cross-motion and dismissed the complaint with prejudice.

The judge found plaintiff's claim for an elective share was time-barred under N.J.S.A. 3B:8-12 because she did not assert her claim within the

prescribed six-month statutory period. The court rejected plaintiff's equitable tolling argument, noting she did not provide, nor did the court find, any case law supporting the proposition that "the time that it takes to undo the [prenuptial agreement] reinstates the right to the elective share."

In denying plaintiff's request to invalidate the Agreement, the judge noted plaintiff failed to identify any evidence of, or sufficiently plead, fraud. Further, the judge rejected plaintiff's contention that decedent engaged in unconscionable conduct by not properly disclosing his financial matters before the Agreement was executed.

Finally, the judge found plaintiff's request for equitable distribution of the Florida Property moot because the property was already sold.

Plaintiff moved for reconsideration. In support, plaintiff submitted a certification of her daughter, Helen Zimmerman, alleging that in May 2017, she retrieved documents that showed that decedent "likely did not accurately set forth his financial net worth to [plaintiff] at the time of the signing of the Prenup." Attached as exhibits were: (1) decedent's 2011 and 2012 federal tax returns; (2) Gillette Enterprises, Inc.'s 2012 federal and state corporate tax returns; (3) a list of properties held by Gillette Enterprises, Inc. as of June 19, 2009, in which decedent held a 22% ownership interest, consisting of thirty-four

buildings worth approximately $45,000,000; and (4) statements of decedent's net worth as of December 31, 2008 (totaling $5,643,200), December 31, 2012 (totaling $15,426,059), and December 31, 2013 (totaling $15,884,501). In contrast, decedent's financial statement as of December 31, 2012—that was attached as an exhibit to the Agreement—set forth a net worth of $16,051,296.

The court found the information contained in the documents relied upon by plaintiff was not new information because plaintiff or her daughter possessed those documents for over a year before plaintiff filed her complaint. The court further found that even if the documents were considered new evidence, the purported discrepancies did not demonstrate decedent engaged in any fraudulent conduct. The court concluded plaintiff did not provide any evidence that the financial statement attached to the Agreement was inaccurate. Accordingly, the court denied reconsideration. This appeal followed.

Plaintiff raises the following points for our consideration: (1) the Agreement should be held unenforceable; (2) plaintiff's right to assert her elective share should be preserved pending resolution of her claim that the Agreement is unenforceable; (3) the court should impose a constructive trust upon decedent's estate to prevent waste or improper transfer of assets; and (4)

the court should grant plaintiff a cash bequest from decedent's estate in the amount of the sale proceeds of the Florida Property.

We have carefully reviewed the record and applicable principles of law and conclude that plaintiff's arguments lack merit.

II.

Under New Jersey law, a surviving spouse "has a right of election to take an elective share of one-third of the augmented estate" of a deceased spouse, subject to certain "limitations and conditions." N.J.S.A. 3B:8-1. Pursuant to N.J.S.A. 3B:8-12, the surviving spouse

> may elect to take [her] elective share in the augmented estate by filing a complaint in the Superior Court within [six] months after the appointment of a personal representative of the decedent's estate. The court may, before the time for election has expired and upon good cause shown by the surviving spouse . . . extend the time for election upon notice to persons interested in the estate and to distributees and recipients of portions of the augmented estate whose interests will be adversely affected by the taking of the elective share.

On May 5, 2017, decedent's Will was admitted to probate and the Executrix was appointed. Plaintiff received written notice of those events six days later. Accordingly, plaintiff was required to assert her election to take an elective share of decedent's estate as decedent's surviving spouse by filing a complaint within six months of May 5, 2017. Plaintiff did not seek an extension

of time and filed her complaint on July 12, 2018, more than fourteen months after receiving notice that the Will had been probated.

Plaintiff contends "equitable tolling should be applied" because "a party should not be able to hide behind a statute of limitations defense when the lapse was due to the misconduct of the party asserting the defense," citing Freeman v. State, 347 N.J. Super. 11 (App. Div. 2002). The trial court rejected this argument, finding no evidence of such misconduct.

In Freeman, the court noted "[e]quitable tolling may be applied where 'the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.'" Id. at 31 (quoting Dunn v. Borough of Mountainside, 301 N.J. Super. 262, 280 (App. Div. 1997)). Absent such conduct, "the doctrine of equitable tolling should be applied sparingly." Ibid. (citing United States v. Midgley, 142 F.3d 174, 179 (3d Cir. 1998)).

As we have noted, plaintiff was promptly notified that decedent's Will was admitted to probate and an executrix was appointed. Plaintiff's counsel wrote to estate counsel on September 18, 2017, to advise that plaintiff intended to enforce her elective share of decedent's estate. Plaintiff did not seek an extension of the filing deadline. We concur with the trial court that the record contains no evidence, nor does plaintiff appear to allege, that the Executrix or

11

counsel for the Estate intentionally tricked or induced her into allowing the filing deadline to expire. The record fully supports the court's finding that plaintiff did not establish a factual basis for equitable tolling and that her claim for an elective share was time-barred.

III.

We next address plaintiff's claim that the trial court erred by determining the Agreement was unenforceable. We are unpersuaded by her argument.

The right to take an elective share of the augmented estate of a deceased spouse "may be waived, in whole or in part, by written agreement." In re Estate of Shinn, 394 N.J. Super. 55, 61 (App. Div. 2007); accord N.J.S.A. 3B:8-10 (permitting waiver of an elective share "by a written contract, agreement or waiver, signed by the party waiving after fair disclosure").

Our courts have long held that prenuptial agreements are enforceable assuming full disclosure of financial conditions, knowledge and acceptance of the terms and conditions of the agreement, and the agreement is fair and not unconscionable. Rogers v. Gordon, 404 N.J. Super. 213, 219 (App. Div. 2008).

In 1988, New Jersey adopted the Uniform Premarital and Pre-Civil Union Agreement Act, N.J.S.A. 37:2-31 to -41. Under the Act, parties to a prenuptial agreement may contract with respect to the "rights and obligations" of each party

in any property in which either of them has an interest "whenever and wherever acquired or located."  N.J.S.A. 37:2-34(a).  The agreement may also provide for "[t]he disposition of property upon separation, marital dissolution, dissolution of a civil union, death, or the occurrence or nonoccurrence of any other event."  N.J.S.A. 37:2-34(c).  The agreement may also affect "[t]he making of a will, trust, or other arrangement to carry out the provisions of the agreement," and "[t]he ownership rights in and disposition of the death benefit from a life insurance policy."  N.J.S.A. 37:2-34(e), (f).

Plaintiff bears the burden of proof to set aside the Agreement.  N.J.S.A. 37:2-38.  A prenuptial agreement is unenforceable

> if the party seeking to set aside the agreement proves, by clear and convincing evidence, that:
>
> a.  The party executed the agreement involuntarily; or
>
> b.  (Deleted by amendment, P.L. 2013, c. 72).
>
> c.   The agreement was unconscionable when it was executed because that party, before execution of the agreement:
>
>> (1) Was not provided full and fair disclosure of the earnings, property and financial obligations of the other party;
>>
>> (2) Did not voluntarily and expressly waive, in writing, any right to disclosure of the property or

13

financial obligations of the other party beyond the disclosure provided;

(3) Did not have, or reasonably could not have had, an adequate knowledge of the property or financial obligations of the other party; or

(4) Did not consult with independent legal counsel and did not voluntarily and expressly waive, in writing, the opportunity to consult with independent legal counsel.

d. The issue of unconscionability of a premarital or pre-civil union agreement shall be determined by the court as a matter of law.

[N.J.S.A. 37:2-38.]

We have previously held "that there is no material distinction between" the requirement to provide "full and fair disclosure of the earnings, property and financial obligations" under N.J.S.A. 37:2-38(c)(1) and the requirement of "fair disclosure" under N.J.S.A. 3B:8-10. Shinn, 394 N.J. Super. at 63.

Exhibit "A" to the agreement is decedent's financial statement identifying and setting forth the values of his assets and liabilities as of December 31, 2012. Article X indicates that plaintiff reviewed decedent's financial statement and retained independent counsel "to review and represent her in conjunction with" the Agreement prior to signing it. During the October 2018 hearing, the court

14

rejected plaintiff's argument that decedent was required to produce more information, including appraisals and bank statements.

We review the trial court's factual findings that the Agreement satisfied the requirements of either N.J.S.A. 3B:8-10 or N.J.S.A. 37:2-38, "by applying the familiar standard that findings of fact should not be disturbed unless we are convinced that they are 'so manifestly unsupported by or inconsistent with the competent, relevant and reasonable credible evidence as to offend the interests of justice.'" Shinn, 394 N.J. Super. at 65-66 (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974)). However, a trial court's "interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Id. at 66 (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

Plaintiff cites Orgler v. Orgler, 237 N.J. Super. 342 (App. Div. 1989) and an unpublished opinion[1] in support of the proposition that a sufficiently "detailed financial statement would include not only the number values of the assets listed, but how the number values were determined, as well as supporting

---

[1] Unpublished opinions do not constitute precedent, are not "binding on any court," R. 1:36-3, "and cannot reliably be considered part of our common law," Trinity Cemetery v. Wall Twp., 170 N.J. 39, 48 (2001) (Verniero, J., concurring) (citing R. 1:36-3)).

documentation regarding the value of each asset listed." Plaintiff's reliance on Orgler is misplaced.

In Orgler, the court noted that the "'easiest device' to evidence" knowledge of a party's financial condition "is by annexing to the agreement a list of assets and their approximate values." Id. at 349 (quoting Marschall v. Marschall, 195 N.J. Super. 16, 33 (Ch. Div. 1984)). The court found the prenuptial agreement unenforceable in part because "the parties appended no schedule of their respective assets to the agreement." Ibid.

Here, unlike in Orgler, decedent attached his financial statement to the Agreement, which identifies "a list of assets and their approximate values." Ibid. Plaintiff retained and consulted with independent counsel before signing the Agreement. In Article XVI, plaintiff acknowledged that she read and understood the Agreement and "had ample opportunity to consult with legal counsel." Neither plaintiff nor her attorney requested additional financial information before the Agreement was signed. Thus, unlike in Shinn, decedent did not "deliberately refuse[] to make such a disclosure" or "stonewall[]" any such requests for additional financial information. Shinn, 394 N.J. Super. at 70.

We are satisfied that the trial court accurately interpreted and correctly applied the requirements of N.J.S.A. 37:2-38. The motion record supports the

16

court's determination that plaintiff did not meet her burden of proof by clear and convincing evidence. We thus discern no reason to disturb the determination that the Agreement was enforceable because it met the requirements N.J.S.A. 37:2-38 and, in turn, N.J.S.A. 3B:8-10.

IV.

Plaintiff argues the court erred in denying her motion for reconsideration because she provided newly discovered evidence that calls into question the accuracy of decedent's net worth as set forth in Schedule 'A' of the Agreement."

Motions for reconsideration are governed by Rule 4:49-2. "Reconsideration is a matter to be exercised in the trial court's sound discretion." Capital Fin. Co. of Del. Valley, Inc. v. Asterbadi, 398 N.J. Super. 299, 310 (App. Div. 2008). Reconsideration should be employed only "for those cases which fall into that narrow corridor in which either 1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996) (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)). "A motion for reconsideration is designed to seek review of an order based on the evidence before the court on the initial motion, [Rule] 1:7-4,

not to serve as a vehicle to introduce new evidence in order to cure an inadequacy in the motion record." Asterbadi, 398 N.J. Super. at 310 (citing Cummings, 295 N.J. Super. at 384)). "Reconsideration cannot be used to expand the record and reargue a motion." Ibid. "[T]he motion is properly denied if based on unraised facts known to the movant prior to entry of judgment." Pressler & Verniero, Current N.J. Court Rules, cmt. 2 on R. 4:49-2 (2020) (citing Palombi v. Palombi, 414 N.J. Super. 274, 289 (App. Div. 2010); Del Vecchio v. Hemberger, 388 N.J. Super. 179, 188-89 (App. Div. 2006)).

Plaintiff's daughter certified she retrieved the purported new evidence in May 2017. The trial court correctly rejected plaintiff's contention that the documents were new evidence because plaintiff or her daughter had possession of them for over a year before plaintiff filed her complaint in July 2018. On that basis, the trial court properly denied reconsideration.

For sake of completeness, the court examined the documents and found the purported discrepancies did not demonstrate decedent engaged in any fraudulent conduct. We reach the same conclusion. Accordingly, the trial court did not abuse its discretion in denying plaintiff's motion for reconsideration.

V.

Plaintiff further argues she is entitled to a constructive trust because of the "numerous wrongful acts that were engaged in by the [d]ecedent," including "masking his net worth, the amount of properties he owned and what those properties were worth, which induced [her] to sign the [Agreement]." We disagree.

A constructive trust should "be used only when the equities of a given case clearly warrant it." Flanigan v. Munson, 175 N.J. 597, 611 (2003). The party seeking imposition of a constructive trust bears the burden of establishing its right to that remedy by clear and convincing evidence. Dessel v. Dessel, 122 N.J. Super. 119, 121 (App. Div. 1972) (citations omitted).

"[T]he imposition of a constructive trust requires a two-part finding that the res has been received or retained through a 'wrongful act' which 'unjustly enriches' the recipient." Thompson v. City of Atl. City, 386 N.J. Super. 359, 376-77 (App. Div. 2006) (quoting Flanigan, 175 N.J. at 608). A wrongful act is typically "fraud, mistake, undue influence, or breach of a confidential relationship," D'Ippolito v. Castoro, 51 N.J. 584, 589 (1968) (citing Neiman v. Hurff, 11 N.J. 55 (1952)), but can include "innocent misstatements, or even

simple mistakes," Flanigan, 175 N.J. at 609 (quoting Dan B. Dobbs, Remedies § 4.3 at 243 (1973)).

The trial court examined the record, including the purported new documents, and found no evidence of misconduct on the part of decedent.  We concur.  Plaintiff's request for a constructive trust was properly denied.

VI.

Lastly, we address plaintiff's claim that, even though the Florida property was titled solely in decedent's name, and was purchased fifteen years prior to their marriage, she is entitled to equitable distribution because the property was brought in anticipation of marriage.  Plaintiff asserts that she visited properties in Florida with decedent before the Florida Property was purchased, it served as a marital vacation home, and her children regularly stayed at the property.

The Family Part is authorized to equitably distribute assets "in all actions where a judgment of divorce, dissolution of civil union, divorce from bed and board or legal separation from a partner in a civil union couple is entered." Thieme v. Aucoin-Thieme, 227 N.J. 269, 283-84 (2016) (quoting N.J.S.A. 2A:34-23(h)).  "The statute clearly addresses the distribution of property only in the context of an action for divorce or the dissolution of a civil union."  Id. at 284 (citing N.J.S.A. 2A:34-23(h)); see also Carr v. Carr, 120 N.J. 336, 343

(1990) (stating that "ordinarily, equitable distribution of marital assets arises only with the adjudication of divorce").

Here, the marriage was terminated not by divorce, but by decedent's death. Plaintiff and decedent were not separated, divorced, or engaged in divorce proceedings when decedent died.[2] Accordingly, plaintiff is not entitled to the statutory remedy of equitable distribution.

In addition, the Agreement provides that equitable distribution shall only apply to joint property acquired during the marriage. For this additional reason, plaintiff has no right to equitable distribution of the sale proceeds of the Florida Property, which was purchased solely in decedent's name long before the parties were married and is listed in the Agreement under decedent's "personal assets."

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[2] Indeed, even if a divorce action had been pending at the time of decedent's death, "[d]ivorce proceedings abate with the death of one of the parties." Carr, 120 N.J. at 342 (citations omitted). Absent "highly unusual circumstances," that are not present here, a claim for "statutory equitable distribution is conditioned on the termination of marriage by divorce." Id. at 342-43. "Thus, with the death of her husband, a judgment of divorce was no longer attainable by [plaintiff] and, derivatively, equitable distribution under [N.J.S.A. 2A:34-23] also became unattainable." Id. at 342.

A-3739-18T4