890 A.2d 1013 (2006)
383 N.J. Super. 127
Elizabeth BERNOSKIE, Administratrix ad Prosequendum and General Administratrix of the Estate of Charles Bernoskie, Deceased, Plaintiff-Respondent,
v.
Robert ZARINSKY, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued December 7, 2005.
Decided February 10, 2006.
*1015 Clifford N. Kuhn, Jr., Edison, argued the cause, for appellant.
Kenneth S. Javerbaum, Springfield, argued the cause for respondent (Javerbaum, Wurgaft, Hicks & Zarin, attorneys; Mr. Javerbaum, on the brief).
Before Judges SKILLMAN, AXELRAD and MINIMAN.
The opinion of the court was delivered by
SKILLMAN, P.J.A.D.
This case is before us for the second time. The issue presented is whether the doctrine of equitable tolling allows plaintiff to pursue wrongful death and survivorship claims against the person she alleges murdered her husband, even though her complaint was not filed until more than forty years after the crime.
We briefly recount the facts. On the evening of November 28, 1958, Officer Charles Bernoskie of the Rahway Police Department attempted to apprehend two persons who were committing a burglary of a car dealership. A gun battle ensued in which Officer Bernoskie was shot three times, resulting in his death a short while later. For the next forty years, the law enforcement officials who investigated the murder were unable to identify any suspects. However, in the summer of 1999, based on information provided by defendant's sister, the police identified defendant and his cousin, Theodore Schiffer, as the apparent perpetrators.
After indictments were returned against both men, Officer Bernoskie's widow, plaintiff Elizabeth Bernoskie, Administratrix ad Prosequendum and General Administratrix of his estate, brought this wrongful death and survivorship action against defendant and Schiffer.[1]
In the first appeal, we affirmed a trial court order that denied defendant's motion to dismiss plaintiff's complaint on the ground that it was barred by the two-year statutes of limitations applicable to wrongful death and survivorship actions. Bernoskie v. Zarinsky, 344 N.J.Super. 160, 781 A.2d 52 (App.Div.2001). We agreed with the trial court's conclusion that defendant "may be precluded by the doctrine of equitable tolling from invoking the applicable statute of limitations." Id. at 162, 781 A.2d 52. We also agreed with the court's further conclusion that "there [are] countervailing considerations of possible unfairness to defendant in being required to defend an action based on events that occurred more than forty years ago," id. at 163, 781 A.2d 52, and therefore, a final determination concerning the tolling of the statutes of limitations should be made at an evidentiary hearing after the conclusion of the criminal proceedings against defendant, id. at 163-64, 781 A.2d 52. During the pendency of the first appeal, the criminal *1016 proceedings against defendant resulted in an acquittal. Accordingly, we remanded the case to the trial court to conduct the hearing contemplated by the order denying defendant's motion to dismiss.
The evidence presented at the remand hearing included statements given to the police by Schiffer, who admitted he was one of the perpetrators of the murder, and defendant's sister, Judith Sapsa. Schiffer alleged that defendant was the one who shot Officer Bernoskie. According to Schiffer, after he and defendant were shot in an exchange of gunfire with Bernoskie, they went to the house of defendant's grandmother. Defendant's aunt, Irene Shagus, then drove them to defendant's house, where defendant's mother cared for both Schiffer's and defendant's gunshot wounds. Defendant's sister stated that she saw her aunt bring Schiffer and defendant to her parents' house on the night of the murder and later witnessed her mother remove bullets from both Schiffer and defendant.
Defendant, who was the sole witness at the remand hearing, categorically denied committing the crime. He also testified that all the persons he could have called as defense witnesses if the case had been tried sooner had died and that much of the real evidence he could have introduced had been lost or destroyed. For example, according to defendant, he and his girlfriend, Caroline Ralonis, went to the movies the night of the murder and returned to his parents' house afterwards. However, by the time this action was filed, Ralonis and defendant's parents were dead. Therefore, the passage of time prevented defendant from presenting the testimony of these potential alibi witnesses.
Defendant also testified that when he and Ralonis arrived home from the movies, his parents told him that Schiffer's sister, Peggy Gaylish, and her husband, Walter, had come to their home during the evening and had brought his sister, Judith, to their own house. Defendant hypothesized that Schiffer and whoever else committed the murder with him went to the house of Peggy Gaylish, who lived only a short distance from the site of the murder, rather than to his house, which was further away, and that Peggy Gaylish was the one who cared for their wounds, not his mother. Defendant also testified that because Peggy Gaylish and her husband had picked up his sister earlier that evening, his sister would have been present while Peggy was tending to Schiffer's gunshot wound. Defendant contended that because Peggy and Walter Gaylish died before this action was filed, he was deprived of the opportunity of calling them to testify that he was not with Schiffer the night of the murder.
Defendant also claimed that Irene Shagus would have testified, contrary to Schiffer's and Judith's statements, that she did not see defendant the night of the murder. However, he was deprived of the opportunity to present such testimony because Shagus also died before this action was filed.
The evidence obtained by the police in the course of their investigation of Bernoskie's murder included statements by three eyewitnesses who provided descriptions of the perpetrators. These three witnesses also died before this action was filed. Consequently, defendant contended that he was deprived of the opportunity to call these eyewitnesses, who could have testified that his appearance did not match that of any of the perpetrators.
Defendant also hypothesized that Schiffer's accomplices in the Bernoskie murder were Steve Kube and Lenny Mayer, friends of Schiffer who defendant alleged had been his accomplices in other crimes. However, by the time this action was filed, Kube and Mayer had died. Therefore, *1017 defendant contended that he was deprived of the opportunity to show that their appearances matched the descriptions of the perpetrators provided by the three eyewitnesses. Defendant also contended that Kube's and Mayer's deaths deprived him of the opportunity of obtaining a comparison of their fingerprints with fingerprints found at the murder scene.
The trial court did not make any finding as to whether defendant was one of the perpetrators of Officer Bernoskie's murder. However, the court concluded that it would not be unfair to require defendant to defend this action, despite the passage of more than forty years since the murder, and therefore the two-year statutes of limitations applicable to plaintiff's claims should be equitably tolled. In reaching this conclusion, the court stated:
Let's deal first with the alibi witness, so-called; ... who he claims could establish his whereabouts on the night of November 28, 1958, that, in so doing, would establish he was not near Miller Pontiac [the site of the Bernoskie murder], had nothing to do with the incident, but rather that he had gone to the movies with his girlfriend, Caroline Ralonis. She is now deceased. There is no sworn statement from her or anything in evidential form from her to establish that she accompanied him to the movies that evening.
The next are his mother and father, who he says would testify that after they left movies, they were visited by him at [their home]. There is nothing in evidential form provided by Veronica or Julius Zarinsky to support what he claims they would say, that, therefore, between the movies and the visit to the parental home that evening, he was not able to be anywhere near the vicinity of Miller Pontiac.
. ...
And the other three individuals who saw young men running. Their statements are sworn. There's notarization in the foot of each. They are available, and therefore, under the evidence rule, appear to be in a form that would admissible, at least to some extent, at trial. I have not reviewed the entire content of those statements. I need not. The focus is on descriptions given by each as to what they saw. But you're dealing with an event that occurred on a rainy night after 10 p.m. where three individuals saw people running and gave descriptions of those runners. Mr. Zarinsky is urging that because those descriptions are so varied from what his appearance was at that time, that their testimony is significantly important to him.
One, it appears that [the statements] would be admissible to show that disparity, but; two, he calls it identification testimony, but it's not quite that. It's part ... of an incident and what was observed by any of those who had observed anything. But it is not the type of direct eyewitness identification that would be much more important for a defendant to be unable to meet if that declarant is unavailable.
The case was subsequently tried before a jury, which returned a verdict in plaintiff's favor for $2,500,000 on the wrongful death claim and $7,000,000 on the survivorship claim.
On appeal, defendant argues that the trial court erred in ruling that the two-year statutes of limitations applicable to plaintiff's wrongful death and survivorship claims were equitably tolled. Defendant also argues that even if the court properly allowed this action to proceed, he is entitled to a new trial because plaintiff presented unfairly prejudicial evidence at trial and her counsel's summation was *1018 egregiously inflammatory. We conclude that the trial court erred in ruling that the statutes of limitations were equitably tolled under the circumstances of this case. Accordingly, we reverse.
A statute of limitations may be equitably tolled if the wrongdoer has concealed his identity, thereby preventing the injured party from bringing suit within the limitations period. Freeman v. State of N.J., 347 N.J.Super. 11, 31-32, 788 A.2d 867 (App.Div.2002); Bernoskie, supra, 344 N.J.Super. at 166-68, 781 A.2d 52; Villalobos v. Fava, 342 N.J.Super. 38, 50-52, 775 A.2d 700 (App.Div.), certif. denied, 170 N.J. 210, 785 A.2d 438 (2001); Dunn v. Borough of Mountainside, 301 N.J.Super. 262, 279-81, 693 A.2d 1248 (App.Div.1997). The rationale of this doctrine is that "[t]hose who may benefit from a statute of limitation can have no part in preventing a potential claimant from learning their identity." Id. at 280, 693 A.2d 1248 (quoting Davis v. Frapolly, 742 F.Supp. 971, 975 (N.D.Ill.1990)). "Statutes of limitation are primarily a shield to protect a defendant from having to defend stale claims." Ibid. Therefore, "[t]hey should not be used as a sword by a defendant whose conduct contributed to the expiration of the statutory period." Ibid.[2] "However, absent a showing of intentional inducement or trickery by a defendant, the doctrine of equitable tolling should be applied sparingly and only in the rare situation where it is demanded by sound legal principles as well as the interests of justice." Freeman, supra, 347 N.J.Super. at 31, 788 A.2d 867.
Thus, the threshold factual predicate for plaintiff's equitable tolling claim is a finding that defendant's misconduct contributed to expiration of the applicable limitations period. See Bernoskie, supra, 344 N.J.Super. at 166-68, 781 A.2d 52; Dunn, supra, 301 N.J.Super. at 280-81, 693 A.2d 1248. Absent this finding, there would be no basis for equitable tolling. Freeman, supra, 347 N.J.Super. at 31, 788 A.2d 867. A plaintiff who seeks to invoke equitable tolling bears the burden of establishing this factual foundation. See Lopez v. Swyer, 62 N.J. 267, 276, 300 A.2d 563 (1973).
In this case, the misconduct that plaintiff relies upon in support of her claim of equitable tolling is defendant's alleged murder of her husband and his subsequent efforts to avoid detection and apprehension. However, the trial court made no finding that defendant murdered Officer Bernoskie, and absent this finding, the denial of defendant's motion to dismiss plaintiff's complaint as barred by the statutes of limitations cannot stand.
The question is whether the case should be remanded to the trial court to make a finding on this issue or whether the passage of time since the murder and resulting loss of potential evidence precludes a fair determination of this threshold factual issue. Therefore, the evidence presented at the remand hearing must be reviewed to determine whether it supports the court's finding that, despite the passage of more than forty years since the murder and the death of every potential defense witness other than defendant himself, a fair determination can still be made as to whether defendant murdered Officer Bernoskie.
*1019 The only evidence presented at that hearing was defendant's testimony, Schiffer's and Judith Sapsa's statements inculpating defendant in the murder, and the eyewitness statements and other evidence obtained in the investigation conducted shortly after the crime. Although Schiffer's statement identified defendant as his accomplice in the burglary that resulted in Bernoskie's murder and Judith's statement alleged that she saw her mother care for Schiffer's and defendant's gunshot wounds, there were serious questions raised concerning the credibility of both of these witnesses.
Judith did not report what she allegedly observed on the night of the murder until 1999, when defendant pressed charges against her and her husband for misappropriating more than $100,000 from their mother's estate, which resulted in the arrest of her husband. Consequently, Judith's allegations regarding defendant's participation in the crime may have been motivated by vindictiveness against defendant for reporting her misappropriation of funds and a desire to curry favor with the prosecutor in order to receive leniency for herself and her husband.
Schiffer did not implicate defendant in the murder until after he was charged with the crime and the police confronted him with strong evidence of his own involvement, including a scar on his chest consistent with a bullet wound and a fingerprint on an antifreeze can found at the murder scene that matched Schiffer's fingerprints. Schiffer then entered into a plea agreement under which he agreed to testify against defendant and the State agreed in return to accept a guilty plea to a charge of aiding and abetting felony murder, for which Schiffer received a negotiated sentence of fifteen years imprisonment, of which he was only required to serve three years. The State also agreed that Schiffer's period of incarceration could be served in a county jail near his home in Pennsylvania. Thus, Schiffer's allegation that defendant was the other participant in the Bernoskie murder may have been motivated by his desire to obtain a favorable plea agreement.
The credibility issues raised by Judith's misappropriation of funds from her mother's estate and Schiffer's participation in the Bernoskie murder, and the evident desire of these witnesses to receive lenient treatment for their own crimes by implicating defendant, were substantial enough to result in defendant's acquittal at the criminal trial.
Defendant's three alleged alibi witnesseshis girlfriend, mother and fatherall died before defendant was charged with the Bernoskie murder and this action was filed. Defendant's aunt, Irene Shagus, who defendant claims would have contradicted Schiffer's and Judith's allegation that she drove Schiffer and defendant from the home of defendant's grandmother to his mother's home, also died before defendant was charged. As a result, none of these potential defense witnesses provided statements concerning what occurred on the evening of the murder, and there is no assurance they would have given exculpatory testimony consistent with defendant's version of that evening's events. Moreover, even if they had given such testimony, their credibility would have been subject to attack based on their close personal relationships with defendant. Nevertheless, the passage of more than forty years between the Bernoskie murder and the filing of this action deprived defendant of any opportunity to call these potential defense witnesses.
The three eyewitnesses to the murder provided statements to the police that included descriptions of the perpetrators. Although defendant was able to introduce *1020 these statements at trial, the death of the eyewitnesses prevented defendant from interviewing them to determine whether they would testify that he did not look like any of the perpetrators. Furthermore, defendant aged considerably during the forty years between the murder and the trial, and the only photograph of himself that he could produce was taken eleven years after the murder. Thus, defendant's ability to present evidence that would have enabled the jury to compare the eyewitnesses' descriptions of the perpetrators with defendant's appearance at the time of the crime was seriously impaired. In addition, because Schiffer's two friends, Mayer and Kube, who defendant hypothesized may have been Schiffer's actual accomplices, also died before this action was filed, defendant was deprived of the opportunity to present evidence regarding the similarity of their appearances to the eyewitnesses' descriptions of the perpetrators and to compare their fingerprints with fingerprints found at the murder scene.
"[T]he principal consideration underlying [a statute of limitations] is one of fairness to the defendant." Lopez, supra, 62 N.J. at 274, 300 A.2d 563. A statute of limitations reflects legislative recognition that "[i]t may ... be unjust[]... to compel a person to defend a law suit long after the alleged injury has occurred, when memories have faded, witnesses have died and evidence has been lost." Ibid. These considerations are equally applicable to both the defense of the underlying claim and the establishment of the factual predicate for equitable tolling that would allow the action to be tried many years after the operative events.
Due to the passage of forty years since the Bernoskie murder, defendant's ability to defend plaintiff's claim has been impaired by the death of every potential defense witness other than himself and his inability to present a photograph of himself as an eighteen year-old, which he claimed would have shown characteristics vastly different from those described by the eyewitnesses. It is of course impossible to know whether the potential testimony of the deceased alibi witnesses and eyewitnesses would have been exculpatory or whether evidence of defendant's appearance at the time of the crime and other physical evidence would have supported defendant's assertions. However, the statutes of limitations applicable to plaintiff's claims reflect a legislative policy judgment that a civil action defendant should not be required to defend a claim where potential defense witnesses have died and evidence has been lost, even though there may be uncertainty concerning what testimony those witnesses would have provided and the persuasiveness of such testimony and other lost evidence. See Mancini v. Twp. of Teaneck, 179 N.J. 425, 435, 846 A.2d 596 (2004); Lopez, supra, 62 N.J. at 274, 300 A.2d 563. Therefore, we conclude that the passage of forty years since the Bernoskie murder has deprived defendant of a fair opportunity to defend plaintiff's claim that he was a participant in the crime.
Our conclusion would be different if defendant has been convicted in the criminal trial. The current Criminal Code provides that a prosecution for murder "may be commenced at any time," N.J.S.A. 2C:1-6a, and the criminal code in effect at the time of Bernoskie's murder also allowed an indictment for murder to be returned at any time, N.J.S.A. 2A:159-2. However, the statutes of limitations applicable to civil actions contained no comparable provisions until 2000. In that year, after this action was filed, the Legislature amended the Wrongful Death Act to provide:
Every action brought under this chapter shall be commenced within 2 years *1021 after the death of the decedent, and not thereafter, provided, however, that if the death resulted from the murder, aggravated manslaughter or manslaughter for which the defendant has been convicted, found not guilty by reason of insanity or adjudicated delinquent, the action may be brought at any time.

[L. 2000, c. 157, § 1; N.J.S.A. 2A:31-3 (emphasis added).]
This amendment does not apply to the present action because plaintiff's complaint was filed before its effective date.[3] Nevertheless, the amendment reflects a legislative policy judgment that it is fair to toll the running of the statute of limitations applicable to a wrongful death claim if the defendant has been found guilty in a criminal trial. Such a legislative policy judgment may be properly considered in determining the application of a common law doctrine such as equitable tolling. See Carr v. Carr, 120 N.J. 336, 350, 576 A.2d 872 (1990); Haynes v. First Nat'l State Bank of N.J., 87 N.J. 163, 188-89, 432 A.2d 890 (1981).
Equitable tolling of a civil action based on an alleged murder also may be appropriate in some circumstances even though the defendant has been acquitted in a criminal trial. For example, in Allred v. Chynoweth, 990 F.2d 527 (10th Cir.1993), a defendant acquitted of a murder subsequently published a book in which she admitted committing the crime. In addition, she made public appearances to promote the book at which she openly recounted the details of the crime and her false testimony at trial. After the defendant made these revelations, the family of the murder victim brought a wrongful death action. In upholding the district court's ruling that the statute of limitations applicable to the action was tolled until the defendant published her book, the court stated:
Ms. Chynoweth's use of a disguise in committing the murder and, more importantly, her false testimony at trial misled the criminal jury and the plaintiffs.
. ...
Because Ms. Chynoweth does not contest liability, she cannot assert the delay has impaired her ability to present a defense. Her only claim is that plaintiffs should not be able to recover because she successfully prevented them from discovering her liability for many years. That is not within the ambit of equitable concern which motivates the adoption of statutes of limitations.
[Id. at 532.]
Unlike in Chynoweth, defendant denies that he was a participant in the Bernoskie murder and asserts that the death of every potential defense witness during the more than forty year period since the crime has seriously impaired his ability to defend this action. Although it is now impossible to know whether those potential defense witnesses would have provided the exculpatory testimony hypothesized by defendant or how credible a trier of fact would have found such testimony, the statutes of limitations applicable to plaintiff's claims reflect a legislative policy judgment that, except in the kind of extraordinary circumstances presented in Chynoweth, a defendant in a civil action should not be compelled to defend a claim where the passage of time may have impaired his ability to present an effective defense.
*1022 Accordingly, the judgment in favor of plaintiff is reversed and her complaint is dismissed.
NOTES
[1] Although the complaint was served upon Schiffer, he did not answer, and plaintiff's claim against him was subsequently dismissed for lack of prosecution.
[2] Equitable tolling also may be appropriate (1) "where a plaintiff has in some extraordinary way" been prevented from asserting his rights[,] or (2) "where a plaintiff has timely asserted his rights mistakenly by either defective pleading or in the wrong forum." Freeman, supra, 347 N.J.Super. at 31, 788 A.2d 867. Plaintiff does not suggest that either of these grounds for equitable tolling apply to this case.
[3] Chapter 157 provided that the amendment to the Wrongful Death Act "shall apply to any action filed on or after the effective date including actions filed where the murder, aggravated manslaughter or manslaughter occurred prior to the effective date of this act."