**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2066-19

TODD BLAIR,

     Plaintiff-Appellant,

v.

CARE POINT HEALTH –
CHRIST HOSPITAL,
JERSEY CITY MEDICAL
CENTER, NEIL RASWAT, M.D.,
PETER KOCH, M.D., MANESH
BHATT, M.D., KEITH BISHOFF,
P.A., MUSTAFA EL KHASHAB,
M.D., DELORES DEL CASTILLO,
M.D., and MICHAEL BESSETTE,
M.D.,

     Defendants-Respondents,

and

CATHERINE A. VARANO, M.D.,
and VALDI SAPIRA, M.D.,

     Defendants.

_____

Argued May 4, 2021 – Decided May 24, 2021

Before Judges Yannotti, Haas, and Mawla.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-2744-18.

Ryan Linder argued the cause for appellant (Linder Wing Law Group, attorneys; Ryan Linder, on the briefs).

Gayle M. Halevy argued the cause for respondents Jersey City Medical Center, Delores Del Castillo, M.D., and Keith Bishoff, P.A. (Rosenberg Jacobs Heller & Fleming, PC, attorneys; Gayle M. Halevy, on the brief).

Robert E. Spitzer argued the cause for respondents Peter Koch, M.D., and Michael Bessette, M.D. (MacNeill, O'Neill & Riveles, LLC, attorneys; Lauren K. O'Neill, of counsel; Robert E. Spitzer and Ethan Lillianthal, on the brief).

Rachel M. Schwartz argued the cause for respondent Mustafa El Khashab, M.D. (Giblin, Combs, Schwartz, Cunningham & Scarpa, attorneys; Diana L. Masone and Rachel M. Schwartz, on the brief).

PER CURIAM

Plaintiff Todd Blair appeals from a series of December 11, 2019 orders granting summary judgment to defendant Jersey City Medical Center (JCMC) and several of its physicians (collectively defendants or the JCMC defendants). We affirm.

# I.

We derive the following material facts from the evidence submitted by the parties in support of, and in opposition to, defendants' summary judgment motions, viewed in a light most favorable to plaintiff, the non-moving party. Polzo v. Cnty. of Essex, 209 N.J. 51, 56 n.1 (2012) (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995)).

On July 15 and 16, 2016, plaintiff visited CarePoint Christ Hospital (Christ Hospital) complaining of back pain. On both occasions, he was seen by a doctor, who diagnosed him as suffering from constipation and denied him admission to the hospital. Plaintiff returned to Christ Hospital on November 10, 2016 with the same complaint, received the same diagnosis, and was again denied admission.

On November 11, 2016, plaintiff heard a loud pop in his back while he was in his apartment. He fell to the floor and lost feeling in his lower extremities. An ambulance took plaintiff to JCMC, where diagnostic tests revealed he had an abscess that was pressing on his spinal column.

On November 13, 2016, defendant Dr. Mostafa El Khashab performed spinal surgery on plaintiff to drain the abscess. Immediately after the surgery, Dr. El Khashab told plaintiff he was paralyzed from the waist down. Plaintiff

A-2066-19

claimed that the next day, Dr. El Khashab stated, "I'm not really supposed to tell you this, but had Christ Hospital drained the cyst and found the abscess, you would have walked out of the hospital so if I were you I would go after them."

After the surgery, plaintiff transferred to a rehabilitation facility, where he remained for about two months. During his stay, he retained an attorney to represent him.

Plaintiff stated that he only saw Dr. El Khashab on two occasions following the surgery. Dr. El Khashab removed his stiches a week or two after the surgery. Approximately two months later, plaintiff had an appointment with Dr. El Khashab, who asked plaintiff how he was coming along, but provided no treatment to him.[1]

On July 16, 2018, two years after his second visit to Christ Hospital on July 16, 2016, plaintiff filed a medical malpractice complaint against the hospital, three of its physicians, and a number of fictitious individuals and business entities plaintiff alleged were also "involved in the care, diagnosis and treatment of . . . [p]laintiff during . . . his visits to [Christ Hospital] from July

---

[1] Dr. El Khashab's records stated that plaintiff was his patient through October 2017.

A-2066-19

2016 through November 12, 2016."  Plaintiff did not name JCMC or any of its physicians as defendants in the complaint.

On February 4, 2019, more than two years after he was treated at JCMC, plaintiff filed an amended complaint adding JCMC, Dr. El Khashab, and three other JCMC doctors as defendants.  Plaintiff alleged in the complaint that "[m]edical [p]rofessionals at [JCMC] surgically drained the abscess on November 1[3], 2018, but their intervention proved to be too late as the abscess leaked prior to the drainage and as a result . . . plaintiff was paralyzed from the waist down."  Plaintiff also asserted that "[m]edical [p]rofessionals at [JCMC] failed to intervene in a timely fashion" and he was "directly and proximately injured by . . . [d]efendants['] conduct."

In March and April 2019, plaintiff dismissed his claims against Christ Hospital and its physicians after he was unable to obtain an Affidavit of Merit (AOM) concerning his claims against them as required by the AOM statute, N.J.S.A. 2A:53A-26 to -29.

On March 20, 2019, plaintiff filed a second amended complaint in order to name two additional JCMC physicians as defendants.  Plaintiff repeated his prior allegations against defendants, but added that JCMC "failed to adequately train, supervise and or have adequate safeguards in place to ensure timely

surgical intervention for at risk patients." Thus, plaintiff's claims against defendants remained limited to the time period between November 11, 2016, when he was admitted to JCMC on an emergency basis, and November 13, 2016, when Dr. El Khashab drained his abscess.

"The statute of limitations governing actions for personal injuries requires a plaintiff to commence an action within two years after the cause of action . . . [has] accrued." Baird v. Am. Med. Optics, 155 N.J. 54, 65 (1998) (citing N.J.S.A. 2A:14-2). Asserting that plaintiff's cause of action against them accrued no later than November 13, 2016, when he underwent surgery at their hospital, and because plaintiff did not institute his action against them until February 4, and March 20, 2019, more than two years later, defendants filed motions for summary judgment based on the statute of limitations.

Following oral argument, Judge Joseph V. Isabella granted defendants' motions and dismissed plaintiff's complaint. The judge found that plaintiff's sole assertion was he was injured by defendants when they "failed to intervene in a timely fashion" by immediately performing surgery upon him when he was admitted to JCMC on November 11, 2016. Plaintiff knew he was paralyzed immediately after the surgery was performed. Yet, he did not bring an action against JCMC or any of its physicians until February and March 2019.

A-2066-19

Therefore, Judge Isabella concluded that plaintiff's complaint against defendants was barred by the two-year statute of limitations set forth in N.J.S.A. 2A:14-2.

In so ruling, Judge Isabella considered, but rejected, plaintiff's contention that the statute of limitations should have been tolled. First, plaintiff asserted he did not sue defendants sooner because he relied on Dr. El Khashab's statement that he should "go after" Christ Hospital for not draining his cyst in July 2016. However, Judge Isabella found:

> [T]here is no allegation of repeated statements by Dr. [El] Khashab that could lead [p]laintiff into mistakenly believing there was no malpractice claim [against JCMC]. Instead, [p]laintiff was aware that there was a potential claim and was aware of the injury. Immediately after being discharged from JCMC, [p]laintiff was transferred to [a rehabilitation facility] for approximately two months. Plaintiff retained counsel regarding the present cause of action between December 1, 2016 and January 23, 2017, the time he was treating at [the rehabilitation facility].

The judge continued:

> Furthermore, [p]laintiff became paralyzed while under the care of JCMC. He sought an attorney to file a lawsuit because of this paralysis. Plaintiff requested documents from JCMC. Although plaintiff may have believed that the [Christ Hospital] [d]efendants were liable for this injury, [p]laintiff knew or should have known that, notwithstanding Dr. [El] Khashab's statement, a cause of action may additionally or alternatively exist against JCMC where the paralysis

7 

occurred. Nevertheless, JCMC was inexcusably not named in the original [c]omplaint.

Judge Isabella also rejected plaintiff's argument that the statute of limitations should have been tolled because Dr. El Khashab continued to treat him after November 13, 2016. As noted above, the only allegations plaintiff made in his complaint against Dr. El Khashab and the other defendants concerned the period between November 11 and 13, 2016. Thus, any post-operative care provided by Dr. El Khashab was not relevant to plaintiff's stated cause of action. As the judge explained in his written decision:

> Plaintiff acknowledged that there was a single post-operative surgical visit with Dr. [El] Khashab. Furthermore, Dr. [El] Khashab admitted that he was [p]laintiff's physician until November 2017. Plaintiff submits this therefore necessitates a finding that the [s]tatute [of limitations] did not run until November 2019. However, . . . [p]laintiff's [c]omplaint and the crux of his claims against Dr. [El] Khashab related to the surgery. This is the time where [p]laintiff became paralyzed. Although [p]laintiff alleges the post-operative treatment failed to meet the standard of care, [p]laintiff does not claim that it resulted in the damages forming the basis of this lawsuit. Therefore, the standard rule that the [s]tatute of [l]imitations begins to run at the time of surgery controls notwithstanding Dr. [El] Khashab's post-operative visit with [p]laintiff.

Plaintiff also argued that the judge should have postponed consideration of the summary judgment motions until all discovery had been completed.

A-2066-19

However, Judge Isabella found that plaintiff "nonetheless was [already] in possession of documents with [defendants'] names, [from] which [p]laintiff could have investigated and determined that there was a cause of action. Plaintiff testified at his deposition that he remembered the events occurring at JCMC." Thus, the judge ruled that additional discovery was not required to address the statute of limitations issue.

Judge Isabella next found no merit in plaintiff's contention that because he named fictitious parties in his original complaint against Christ Hospital, his later addition of the JCMC defendants should relate back to the date he filed that complaint. The judge stated that under Rule 4:26-4, fictitious party practice can only be used when a plaintiff, "despite the exercise of due diligence, is unable to ascertain a defendant's identity prior to [the] lapse of [the] [s]tatute of [l]imitations." Determining that this was not the case here, the judge stated:

> Plaintiff's [f]irst [c]omplaint included two separate categories of fictitious defendants. The first included "persons that were involved in the care, diagnosis and treatment of . . . [p]laintiff during the course of his visits to [Christ Hospital] from July 16 through November 12, 2016. . . ." Nevertheless, [p]laintiff was aware of the identities of the JCMC [d]efendants. Plaintiff was conscious, awake, and aware of his treatment at JCMC . . . . Plaintiff became paralyzed during his treatment with JCMC. Plaintiff hired an attorney within two months of discharge from JCMC, who then requested documents from JCMC. The [c]omplaint was not filed

A-2066-19

until July 16, 2018. During the time that elapsed between hiring an attorney and filing the [c]omplaint, due diligence would have revealed [p]laintiff's potential cause of action against [the] JCMC defendants.

The emergency medical records demonstrate that [p]laintiff knew or should have known of the identities of the JCMC [d]efendants. Dr. [El] Khashab was listed as the operating surgeon. [Two other defendants] were mentioned thirty-two and thirty-one times throughout [p]laintiff's emergency medical records, respectively. [A fourth defendant] co-signed a fourteen-page typewritten progress note date[d] November 13, 2016, which noted that she examined plaintiff at 3:00 p.m. on that day, in which she recorded lower extremity numbness and weakness. [Another physician] similarly drafted a thirteen-page typewritten note on November 13, 2016. Therefore, [p]laintiff was not "unable to ascertain" the identities of these [d]efendants.

Accordingly, Judge Isabella granted summary judgment to all of the JCMC defendants because plaintiff did not file suit against them before the expiration of the two-year statute of limitations. This appeal followed.

II.

On appeal, plaintiff raises the same contentions he unsuccessfully presented before Judge Isabella. He again argues that: the statute of limitations should have been tolled by the discovery rule; Dr. El Khashab misled him into only suing Christ Hospital in a timely manner; the statute of limitations did not expire as to Dr. El Khashab because the doctor continued to treat him until

10

October 2017; he should have been permitted to obtain additional discovery before the judge considered defendants' summary judgment motions; and plaintiff's use of fictitious party practice was sufficient to enable his amended complaints against the JCMC defendants to relate back to his initial complaint. Having considered these contentions in light of the record and the applicable law, we affirm substantially for the reasons set forth by Judge Isabella in his written opinion of December 11, 2019. We add the following comments.

We review the trial court's orders granting summary judgment by applying the standard in Rule 4:46-2(c). Invs. Bank v. Torres, 243 N.J. 25, 47 (2020) (citing Mem'l Props., LLC v. Zurich Am. Ins. Co., 210 N.J. 512, 524 (2012)). Therefore, we must determine "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c).

As already noted, a plaintiff in a personal injury action must file suit within two years after the cause of action has accrued. N.J.S.A. 2A:14-2. In medical and dental malpractice actions, the accrual date is generally the date on which the negligent act or omission occurred. See Szczuvelek v. Harborside

Healthcare Woods Edge, 182 N.J. 275, 281 (2005) (citing Martinez v. Cooper Hosp., 163 N.J. 45, 52 (2000)). Here, plaintiff alleged that the JCMC defendants drained plaintiff's abscess on November 13, 2016, but their surgical "intervention proved to be too late as the abscess leaked prior to the drainage and as a result the plaintiff was paralyzed from the waist down."

Thus, the only negligent action plaintiff complained of was the JCMC defendants' alleged failure "to intervene in a timely fashion." That cause of action clearly accrued no later than November 13, 2016, and the two-year statute of limitations therefore expired on November 13, 2018, well before plaintiff filed his amended complaint against the JCMC defendants.

Plaintiff claimed, however, that the discovery rule tolled the running of the statute of limitations. The discovery rule "provides that in an appropriate case a cause of action will be held not to accrue until the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he [or she] may have a basis for an actionable claim." Szczuvelek, 112 N.J. at 281 (alteration in original) (quoting Lopez v. Swyer, 62 N.J. 267, 272 (1973)).

The court must "identify the equitable claims of each party and evaluate and weigh those claims in determining whether it is appropriate to apply the

discovery rule." Ibid. The critical inquiry is "whether the facts presented would alert a reasonable person exercising ordinary diligence that he or she was injured due to the fault of another. The standard is basically an objective one -- whether plaintiff 'knew or should have known' of sufficient facts to start the statute of limitations running." Ibid. (internal quotation marks omitted) (quoting Martinez, 163 N.J. at 52).

Applying these standards, we discern no basis for disturbing Judge Isabella's conclusion that the discovery rule was simply inapplicable to the facts of this case. Here, plaintiff knew as soon as the surgery was completed that he was paralyzed. He knew the name of the physician who drained the abscess, Dr. El Khashab, and, after his attorney obtained plaintiff's medical records, he knew the names of all of the other JCMC doctors who treated him during the period between November 11 and November 13, 2016.

Yet, plaintiff did not file a complaint against any of the JCMC defendants until February 4, 2019, after the statute of limitations had expired. Because defendant knew the extent of his injury and who at JCMC might have injured him, we agree with Judge Isabella that the discovery rule did not apply in this case.

We are also satisfied that the judge properly rejected plaintiff's contention that the statute of limitations should have been "equitably tolled" because Dr. El Khashab told plaintiff he should "go after" Christ Hospital for not draining his abscess in July 2016. A statute of limitations may be equitably tolled when "the wrongdoer has concealed his identity, thereby preventing the injured party from bringing suit within the limitations period." Bernoskie v. Zarinsky, 383 N.J. Super. 127, 135 (App. Div. 2006). This sort of tolling is permitted because "[t]hose who may benefit from a statute of limitation can have no part in preventing a potential claimant from learning their identity." Ibid. (alteration in original) (quoting Dunn v. Borough of Mountainside, 301 N.J. Super. 262, 280 (App. Div. 1997)).

"However, absent a showing of intentional inducement or trickery by a defendant, the doctrine of equitable tolling should be applied sparingly and only in the rare situation where it is demanded by sound legal principles as well as the interests of justice." Id. at 135-36 (quoting Freeman v. State, 347 N.J. Super. 11, 31 (App. Div. 2002)). For equitable tolling to apply, the plaintiff must prove "that defendant's misconduct contributed to expiration of the applicable limitations period." Id. at 136. It "does not excuse claimants from exercising

the reasonable insight and diligence required to pursue their claims." Freeman, 347 N.J. Super. at 32.

As Judge Isabella correctly concluded, there was no basis for "equitably tolling" the application of the statute of limitations under the facts of this case. While Dr. El Khashab told plaintiff he should pursue Christ Hospital for not draining his abscess when he first complained of back pain in July 2016, the doctor never told plaintiff that he or JCMC might not also be at fault. In fact, Dr. El Khashab informed plaintiff he was paralyzed as soon as the surgery was over. From the JCMC medical records, plaintiff's attorney was also able to identify all of the other medical professionals who treated plaintiff at that hospital.

Thus, this is not a case like Abboud v. Viscomi, 111 N.J. 56 (1988) or Lynch v. Rubacky, 85 N.J. 65 (1981), which are cited by plaintiff. In Abboud, the plaintiff's dentist told her that any discomfort she felt following the removal of her wisdom teeth "was a normal part of the healing process and that her condition was not permanent." 111 N.J. at 59. In Lynch, the doctor advised the plaintiff that the ankle he had operated on had completed healed and that her joint pain was "all in [her] head and that [she] should . . . seek the attention of a psychiatrist." 85 N.J. at 67 (alteration in original).

Here, Dr. El Khashab did not misrepresent the extent of plaintiff's condition or exclude his or JCMC's liability for his paralysis. He merely discussed Christ Hospital's potential role. Within two months of leaving JCMC, plaintiff had retained an attorney, who investigated the matter by seeking plaintiff's medical records from JCMC. Thus, Dr. El Khashab's post-operative statement to plaintiff provided no basis for equitably tolling the statute of limitations.

Like Judge Isabella, we also reject plaintiff's argument that because he saw Dr. El Khashab twice after the November 13, 2016 surgery, once to get his stitches out and again about two months later for a brief follow-up visit, the statute of limitations should have not begun to run until after Dr. El Khashab "discharged" him as a patient in November 2017. It is well established that "the mere fact that treatment continues after a single act of negligence, or that the confidential relationship of patient and physician continues, does not postpone the running of the statute" of limitations. Bauer v. Bowen, 63 N.J. Super. 225, 231 (App. Div. 1960). Either the continuing treatment must be a part of the negligent act or the physician must be fraudulently concealing the injury for tolling to occur. Id. at 231-32.

16

As set forth in his first and second amended complaint, plaintiff's sole theory of liability was that Dr. El Khashab and the other JCMC defendants caused his injury during the period between November 11 and 13, 2016, because they "failed to intervene in a timely fashion." Plaintiff did not assert he was harmed by any post-operative treatment provided by Dr. El Khashab or any other physician. Indeed, he testified at his deposition that he "was literally in [the doctor's office] for just a couple of minutes" when he had his second and last visit with Dr. El Khashab about three months after the surgery. Plaintiff did not allege that anything that occurred at that visit, or at any other time after November 13, 2016, contributed to his injury. Thus, we conclude that any continuing treatment by Dr. El Khashab did not extend the two-year statute of limitations.

We also discern no error in Judge Isabella's decision to consider defendants' summary judgment motions even though plaintiff alleged that he wanted to obtain additional medical and radiology records from JCMC in discovery. It is well settled that where a party objects to consideration of a summary judgment motion on the basis that it is premature because discovery has not been completed, the objecting party must demonstrate with specificity

the discovery sought and its materiality.  <u>Auster v. Kinoian</u>, 153 N.J. Super. 52, 56 (App. Div. 1977).

Plaintiff did not meet that requirement here.  As the judge found after his review of the motion record, plaintiff had all of the information needed to file a complaint against the JCMC defendants before the expiration of the statute of limitations in November 2018.  He knew the extent of the injury, the cause of his injury, and the identities of all of the possible defendants.  Plaintiff did not specify what further discovery was sought or how it would excuse his failure to file his complaint in a timely fashion.  Therefore, we reject plaintiff's contention on this point.

Finally, plaintiff asserts that because he used fictitious party practice in his initial complaint, his addition of the JCMC defendants in his first and second amended complaints should relate back to the date of the original complaint.  This argument lacks merit.

In pertinent part, <u>Rule</u> 4:26-4 states:

> In any action, . . . if the defendant's true name is unknown to the plaintiff, process may issue against the defendant under a fictitious name, stating it to be fictitious and adding an appropriate description sufficient for identification.  Plaintiff shall on motion, prior to judgment, amend the complaint to state defendant's true name, such motion to be accompanied

by an affidavit stating the manner in which that information was obtained.

Accordingly, the Rule requires a plaintiff invoking fictitious party practice to satisfy three requirements: (1) the plaintiff must not know the identity of the defendant said to be named fictitiously; (2) the fictitiously named defendant must be described with sufficient detail to allow identification; and (3) the plaintiff must provide proof of how he learned the defendant's identity. Ibid.

Although not expressly stated in the Rule, the party invoking fictitious party practice must also satisfy a fourth requirement: the party must act diligently in attempting to identify the defendant. Matynska v. Fried, 175 N.J. 51, 53 (2002); Claypotch v. Heller, Inc., 360 N.J. Super. 472, 479-80 (App. Div. 2003). Indeed, "[t]he purpose of the rule is to render timely the complaint filed by a diligent plaintiff, who is aware of a cause of action against an identified defendant but does not know the defendant's name." Greczyn v. Colgate-Palmolive, 183 N.J. 5, 11 (2005) (emphasis added). The amended complaint substituting the real name of a fictitiously named party is said to "relate back" to the date the complaint was first filed. Claypotch, 360 N.J. Super. at 480.

Applying these standards, we conclude that nothing in plaintiff's first complaint was sufficient to put the JCMC defendants on notice that they were potentially liable for plaintiff's injuries. In addition to the fact that the complaint

19

was not served upon them, plaintiff only referred to fictitious individuals and business entities employed by Christ Hospital. Thus, none of the JCMC defendants were described with sufficient detail to allow their identification.

Thereafter, plaintiff did not act diligently to add the JCMC defendants to the case. Again, plaintiff knew he underwent surgery at JCMC and knew who performed the surgery. Dr. El Khashab immediately advised plaintiff that he was paralyzed and told him that it was because the abscess had not been drained sooner than it was. Nevertheless, plaintiff allowed the statute of limitations to expire before finally including the JCMC defendants in his first and second amended complaints.

Under these circumstances, Judge Isabella properly concluded that the naming of these new defendants did not relate back to the filing date of plaintiff's initial complaint. Therefore, the judge correctly granted defendants' motions for summary judgment and dismissed plaintiff's complaint.

All other arguments raised in this appeal, to the extent we have not addressed them above, are without sufficient merit to be discussed. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2066-19