**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2182-20

ROBYN KELLY,

     Plaintiff-Appellant,

v.

RWJ BARNABAS HEALTH/
COMMUNITY MEDICAL
CENTER,

     Defendant-Respondent.

_____

Submitted January 20, 2022 – Decided March 16, 2022

Before Judges Hoffman, Whipple, and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-2266-20.

Robyn Kelly, appellant pro se.

Apruzzese, McDermott, Mastro & Murphy, PC, attorneys for respondent (Mark J. Blunda, of counsel and on the brief; Kyle J. Trent, on the brief).

PER CURIAM

Plaintiff Robyn Kelly appeals from a February 25, 2021 order dismissing her complaint with prejudice. We affirm.

Our review of the record informs us of the following facts. Plaintiff worked for defendant RWJ Barnabas Health/Community Medical Center (RWJ) from June 29, 2015, until September 25, 2017. Allegedly, in August 2019 plaintiff's one-time counsel, Gary Mason, sent a demand letter seeking settlement from RWJ for purported legal claims regarding her employment. That letter is not included in the record before us, but defendant's reply is. RWJ investigated those claims and, by letter dated September 19, 2019, responded "there is not a shred of evidence to support Ms. Kelly's claims advanced in your letter." The letter concluded that RWJ would "entertain a discussion for a nominal amount, purely for the purpose of avoiding the costs associated with litigation."

On September 29, 2020, plaintiff filed a complaint against RWJ alleging disability discrimination and constructive discharge under New Jersey's Law Against Discrimination (NJLAD), N.J.S.A. 10:5-1 to -50.[1] She requested compensatory damages for emotional distress, employment wage damages, and punitive damages for defendant's actions in failing to accommodate her

---

[1] Plaintiff asserts she was also pursuing a workers' compensation claim against defendant but it is not part of the record.

disability. Her complaint outlined RWJ's alleged ignoring of her requested accommodation, resulting medical treatment, discriminatory return to work, and constructive discharge. Her complaint did not include any reference to the alleged settlement negotiations or RWJ's general counsel's failure to respond to plaintiff's pro se communications. Besides the alleged discriminatory treatment and constructive discharge, plaintiff states that an "[a]dditional reason for filing" was "the New Jersey State Legislature recently introducing Bill A4637, that if approved and retroactively [] enacted would extend the statute of limitations [(SOL)] to three years."

On December 15, 2020, in lieu of an answer, RWJ filed a motion to dismiss the complaint for failure to state a claim under Rule 4:6-2(e), asserting that NJLAD's two-year SOL barred the claim because the complaint was filed more than three years after plaintiff's alleged constructive discharge on September 25, 2017. RWJ noted that Bill A4637 to extend the SOL had not been enacted and that plaintiff's complaint would still be barred because it was filed more than three years after September 25, 2017.

On December 30, 2020, plaintiff filed a certification in opposition to RWJ's motion. As to the time-bar, she stated:

> It is evident from the defendant's actions that they intentionally [misled] the plaintiff into a bogus

settlement, immediately prior to the statute of limitations timeline. The defendant intentionally and conveniently took a month to forward the settlement release to the plaintiff. Upon receipt of the release, it revealed the defendant[']s clever attempt to terminate the existing active [w]orkers['] [c]ompensation case directly related to the same issue (air freshener exposure) in its entirety, if the document had been signed by the plaintiff. The content of the release verbiage was too broad and would deprive the plaintiff of the benefits of her active [w]orkers[s] [c]ompensation case in the [w]orkers['] [c]ompensation [j]udicial [s]ystem, Toms River, New Jersey. When opposing to sign the document, the defendant, then abruptly and without warning, transferred the [w]orkers['] [c]ompensation case to a different law office and changed attorneys for future handling. The defendant then informed the plaintiff [it] would not settle the two claims separately, placing the [e]mployment [l]aw [c]ase on the back burner at [its] discretion, with no input from the plaintiff. According to notification from the defendant, at that time, effective immediately under [its] control and command, the two matters would be settled together, as well as addressed with the verbiage in the initial settlement covering both claims.

Complexing this matter, the plaintiff's attorney is no longer in business and closed his firm. At that point, the plaintiff advised the defendant of her pro se status pertaining to the employment law case matter. After reaching out to the defendants and with no response back, the plaintiff filed a complaint in Superior [C]ourt . . . . [Defendants] have deliberately [and] manipulatively navigated this claim out of the [s]tatu[t]e of [l]imitations. . . . This should serve as proof of the "continuing violation theory[,]"[] a cumulative pattern of wrongful conduct and bad faith

A-2182-20

tactics that affected the statute of limitations in question.

On January 4, 2021, RWJ filed a reply brief, denying knowledge of a workers' compensation matter and filed its motion to dismiss based solely on the complaint plaintiff filed. On January 6, 2021, plaintiff replied, asserting that she was "helpless against" defendant's "stand-alone decision" to "'kill two birds with one stone' and settle both claims at one time in a shared Settlement and Release document" and to "systematically place[] the employment law matter on the back burner . . . ." Plaintiff used, for the first time, the phrase that RWJ "lulled [her] into a sense of security" and asserted that she relied on defendant's offer as a willingness to settle, before finding that the settlement would terminate the workers' compensation claim.

On January 15, 2021, the court heard oral argument on RWJ's motion to dismiss. The court asked plaintiff whether she was asserting that

> defendant somehow led [her] down a garden path and kept [her] from asserting [her] rights under the LAD claim because they were making offers of settlement and [brought it to her], or assuring [her] that the matter would be – [that her] claims against them for discrimination would be appropriately resolved in her favor . . . .

Plaintiff answered yes, saying she had documentation. She added that she thought the matter was settled on September 25, 2019, but that the damages

5

would be encompassed in the workers' compensation case, which is why she "took so long to encounter [the] employment law matter." The court inquired about what correspondence plaintiff had. She asserted that she had "[paperwork] where [her] attorney had a conversation where they wanted the two attorneys to get together and make what they called a -- a global settlement demand . . . prepared and put together in one document."

The court directed plaintiff to gather and submit any documentation she had, including correspondence, "or a certification from [her] attorney" to support her claim that she was "lulled" into believing the LAD claims would be globally resolved with the other claims and "then [to] explain why [she] still waited a substantial period of time in filing [her] claim . . . ." The court advised that it would view the papers but would not need further oral argument.

On January 22, 2021, plaintiff filed a supplemental submission but did not include supporting documents or a certification from prior counsel. RWJ filed a reply brief, asserting that plaintiff did not meet either path to invoke tolling for two reasons. First, plaintiff did not file a timely pleading. Second, plaintiff did not provide proof that RWJ acted to induce plaintiff to toll the statute, and even if plaintiff's alleged events were true, plaintiff waited ten

6

months after the "too broad" settlement to file a complaint without showing defendant prevented such a filing.

Plaintiff submitted another brief, which included an unsigned Settlement Release agreement, drafted by RWJ. That exhibit said:

> SETTLEMENT AND RELEASE AGREEMENT
>
> ROBYN KELLY, on her own behalf and on behalf of her heirs, executors, administrators, and assigns (collectively referred to as "Employee") and RWJ BARNABAS HEALTH, INC. ("RWJBH" or "Employer") on its own behalf and on behalf of its affiliates, parents, subsidiaries and divisions, and their respective successors and assigns have reached the within Settlement, Release and Non-Disclosure Agreement (hereinafter the "Agreement").

She also presented a letter from Marisa Kussoy, Senior Counsel at RWJ, addressed to plaintiff's then-counsel, which said:

> I write to you in response to your August 1, 2019 letter to . . . VP Human Resources, regarding . . . Robyn Kelly. As advised, we have looked into Ms. Kelly's allegations advanced in your letter. The information obtained during our fact-finding bears out a very different picture of the issues discussed in your letter and does not support Ms. Kelly's purported legal claims regarding her employment with RWJ [] Barnabas Health from June 29, 2015 to September 29, 2017.
>
> All issues which Ms. Kelly brought to her supervisors' attention were addressed. Prior to rendering her resignation, she met with Human

7

Resources on Friday the 22nd and expressed appreciation for the prompt removal of all products containing a fragrance. She did not bring forth any additional concerns during the meeting nor did she respond to the messages left for her after the facility received her letter of resignation.

Unfortunately, when Ms. Kelly submitted her resignation she raised new issues in her resignation letter. We regret Ms. Kelly chose to resign and denied us the opportunity to address her additional concerns.

In sum, there is not a shred of evidence to support Ms. Kelly's claims advanced in your letter. I note that your letter contains a settlement demand of $30,000. Should your client be willing to entertain a discussion for a nominal amount, purely for the purpose of avoiding the costs associated with litigation, I invite you to call me.

Plaintiff explained she rejected the release agreement because it would have deprived her of her ability to pursue her active Workers Compensation Case.

On February 25, 2021, the court dismissed plaintiff's complaint with prejudice concluding that NJLAD's two-year SOL time-barred the complaint. This appeal followed.

On appeal, plaintiff raises the same arguments as she presented to the motion judge, and we find them to be meritless.

8

NJLAD has a two-year SOL. Montells v. Haynes, 133 N.J. 282, 286 (1993). The Court held that "[a]fter carefully considering the purpose of [the] LAD and of statutes of limitations, we conclude that a single statute of limitations should apply to all LAD claims" and that because "injuries under LAD are most like personal-injury claims . . . the two-year personal-injury statute of limitations should apply." Ibid. Thus, a claimant must file her complaint "within two years of the date on which the cause of action 'accrued.'" Henry v. N.J. Dep't of Hum. Servs., 204 N.J. 320, 324 (2010). This "encourage[s] prompt resolution of claims, particularly in discrimination cases where evidence may be 'vulnerable to the passage of time.'" Id. at 332-33 (quoting Montells, 133 N.J. at 291, 293).

The SOL can equitably toll where a plaintiff shows a defendant engaged in misconduct to let time expire. See Bustamante v. Borough of Paramus, 413 N.J. Super. 276, 299 (App. Div. 2010). Equitable tolling applies where "a plaintiff is misled . . . and as a result fails to act within the prescribed time limit," ibid. (alteration in original) (quoting Villalobos v. Fava, 342 N.J. Super. 38, 50 (App. Div. 2001)), and "only if plaintiff demonstrate[s] that he 'ha[d] been induced or tricked by his adversary's misconduct into allowing the filing

deadline to pass,'" ibid. (second alteration in original) (quoting Villalobos, 342 N.J. Super. at 50).

Courts apply equitable tolling sparingly. See Freeman v. State, 347 N.J. Super. 11, 31 (App. Div. 2002). "[A]bsent a showing of intentional inducement or trickery by a defendant, the doctrine of equitable tolling should be applied sparingly and only in the rare situation where it is demanded by sound legal principles as well as the interests of justice." Ibid. "[T]he threshold factual predicate for plaintiff's equitable tolling claim is a finding that defendant's misconduct contributed to expiration of the applicable limitations period," so "[a]bsent this finding, there would be no basis for equitable tolling." Bernoskie v. Zarinsky, 383 N.J. Super. 127, 136 (App. Div. 2006). The party "who seeks to invoke equitable tolling bears the burden of establishing this factual foundation." Ibid.

We provide a plenary review of a motion to dismiss for failure to state a claim. We do not defer to the trial court's decision. Rezem Fam. Assocs., LP v. Borough of Millstone, 423 N.J. Super. 103, 114 (App. Div. 2011). Courts should search the complaint "in depth and with liberality to determine if there is any 'cause of action [] "suggested" by the facts,'" State of N.J. v. Cherry Hill Mitsubishi, 439 N.J. Super. 462, 467 (App. Div. 2015) (alterations in original)

10

(quoting Printing-Mart Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989)), even though "[t]he inquiry is limited to 'examining the legal sufficiency of the facts alleged on the face of the complaint,'" ibid. (quoting Printing-Mart, 116 N.J. at 746). Courts should dismiss a complaint for failure to state a claim "where the pleading does not establish a colorable claim and discovery would not develop one." Ibid. (citing Camden Cnty. Energy Recovery Assocs. v. N.J. Dep't of Env't Prot., 320 N.J. Super. 59, 64 (App. Div. 1999)).

When the trial court considers documents outside the pleadings in deciding a motion to dismiss, appellate courts treat it as a summary judgment motion under Rule 4:6-2(e), see Jersey City Educ. Ass'n v. City of Jersey City, 316 N.J. Super. 245, 254 (App. Div. 1998), and apply de novo review, see Town of Kearny v. Brandt, 214 N.J. 76, 91 (2013). Thus, we consider the factual record in the light most favorable to the nonmoving party. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

Based on our review of the record, plaintiff's complaint is time-barred by NJLAD's two-year SOL and may not be equitably tolled. The NJLAD has a two-year statutory period which would have accrued following plaintiff's alleged constructive discharge on September 25, 2017. Plaintiff has not met

11

her burden to show that RWJ acted intentionally and wrongfully to induce her to run out the SOL.

Plaintiff has not provided sufficient evidence to equitably toll her claim. She did not provide correspondence between her counsel and RWJ's counsel discussing a global settlement demand. She only provided the top of one page of an alleged ten-page settlement offer. She provided the September 19, 2019 letter from RWJ in-house counsel, rejecting her claim, but that RWJ would only consider a nominal amount rather than plaintiff's requested $30,000 in damages.

RWJ's proposed settlement came a month later. Plaintiff avoids stating that she rejected the settlement offer. But she has repeatedly said, then and now, that it was "too broad" and deprived her of her workers' compensation claim; that her then-attorney advised RWJ of the same in November 2019; and that she did not sign the agreement. Thus, plaintiff's alleged reliance on an unsigned, incomplete agreement she rejected does not constitute reasonable reliance to forego timely filing.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

12